### THE STATE v. WABASH PAPER COMPANY.

[No. 2,614. Filed Dec. 7, 1897. Rehearing denied Nov. 17, 1898.]

NUISANCE.—*Depositing Sewage in Stream.*—*Prosecution in Adjoining County.*—*Jurisdiction.*— *Criminal Law.*—Where sewage is deposited in a stream, in violation of section 2154, Burns' R. S. 1894, prosecution may be instituted therefor, under section 1649, Burns' R. S. 1894, in an adjoining county into which such offal was carried by the current of the river and deposited to the damage of the inhabitants of such county. *pp. 168, 170-172.*

APPEAL AND ERROR.—*Assignment of Cross-Errors.*—*Process.*—The sufficiency of service of process cannot be raised by appellee in the Appellate Court without assignment of cross-errors. *p. 169.*

SAME.—*Final Judgment.*—*Indictment.*—*Criminal Law.*—Where the court sustained a motion to quash one count of an indictment and the prosecuting attorney entered a *nolle prosequi* as to the remaining count, and the court ordered the defendant discharged, and judgment was entered accordingly, such order and decree amounts to a final judgment from which an appeal will lie, although there was no judgment for costs. *pp. 169, 170.*

NUISANCE.—*Public Place.*— *Wabash River.*—The Wabash River is a public place within the meaning of section 2154, Burns' R. S. 1894, making it unlawful for any person to cause any offal or filth to be collected or remain in any place, to the damage or prejudice of others or the public. *pp. 172-177.*

Appeal from the Cass Circuit Court. *Reversed.*

*W. A. Ketcham*, Attorney-General, *Merrill Moores, Baker & Daniels, Dickey & Aydelotte, Joseph N. Tillett, Walter C. Bailey* and *Chas. A. Cole*, for State.

*Oliver H. Bogue*, for appellee.

WILEY, J.—The question in this case, as to the sufficiency of the indictment, and the jurisdiction of the court in which the cause originated, is the same as that presented in the case of *State* v. *Herring, ante,* 157; and we now adhere to our holdings in that case. The record before us, however, presents other questions, not presented in that case, and we proceed to their consideration.

It appears from the record that the appellee is a foreign corporation, and maintains at Wabash, in Wabash county, Indiana, a factory and machinery for the manufacture of paper. The indictment was returned in the Miami Circuit Court, and service upon the appellee was obtained by reading the summons to and in the presence of one Paul Herring, designated in the return as the agent of the appellee corporation; there being found no officer of said corporation higher in authority, upon whom process could be served. The appellee entered a special appearance, and moved the court to quash the summons and return thereon, which motion the court overruled; and the appellee excepted, and was given time to prepare and file its bill of exceptions. Within the time allowed by the court, the appellee did prepare and present to the court its bill of exceptions, which was duly signed and filed. Thereupon the appellee filed its affidavit in support of its motion for a change of venue from the county, and the venue was changed to the Cass Circuit Court. The indictment was in two counts, and in the latter court, the appellee moved to quash each count thereof, which motion the court overruled as to the first count, and sustained as to the second; to the latter ruling of which, the State reserved an exception. The prosecuting attorney then entered a *nolle prosequi* as to the first count, and the State gave due notice of its appeal.

The appellee contends, first, that it was not properly served with process, and that hence the record presents no questions for our consideration. With this contention we cannot agree, for the reason that the record as it comes to us, upon this point presents no question for our consideration. The appellee has not assigned cross-errors, and although its bill of exceptions, otherwise properly in the record, it is not entitled to have the question therein raised decided, for its failure to assign cross-errors.

It is contended, secondly, by the appellee, that there was no final judgment entered in the court below, from which this appeal can be prosecuted. We do not think this position is tenable. The record shows that on April 20, 1896, the motion to quash each count of the indictment was passed upon by the court, it being overruled as to the first, and sustained as to the second; and that on April 30, 1896, the prosecuting attorney entered a *nolle prosequi* as to the first count. On the same day notice was served on the appellee and the clerk of the Cass Circuit Court of the appeal. Upon the record as it thus stands, and as we have set it out, the appellee contends that there was no final judgment from which the State could appeal, but the record further shows that on the 28th day of May, 1896, the following order was made and entered: "Come again the parties, and the court now sustains the defendant's motion to quash the second count of the indictment herein, and to which ruling of the court the plaintiff excepts. It is further ordered and adjudged and decreed by the court, that the defendant be discharged as to the second count of the indictment herein. And the state of Indiana now prays an appeal to the Supreme Court of the state of Indiana, which is granted, and these proceedings having been had on the 30th day of April,

1896, and having been omitted to be entered of record on said day, is entered of record now for then." This *nunc pro tunc* entry effectively disposes of appellee's contention that no final judgment was entered from which this appeal could be prosecuted. The record shows that a final judgment was entered as to the ruling on the second count of the indictment by an order discharging the appellee, which is in all respects sufficient, and in fact in our judgment, all that could have been properly entered. There could be no judgment for costs, because the State is not liable for costs, and there could be no judgment against the appellee for costs, because the finding and judgment were in its favor.

This disposes of all the questions raised by appellee and presented by the record. In addition, however, to what was said in the case of *State* v. *Herring, supra,* we desire to make some additional observations. Counsel for the State have cited us to some authorities which greatly strengthen the doctrine announced therein. In Iowa there is a statute which in every respect is like section 1649, Burns' R. S. 1894, and which reads as follows: "When a public offense is committed partly in one county and partly in another, or when the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, jurisdiction is in either county."

In the case of the *State* v. *Smith,* 82 Ia. 423, 48 N. W. 727, the supreme court of Iowa held, under section 4519, which provides that "when a public offense is committed in part in one county and part within another, or when the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, jurisdiction is in either county," that where the acts of defilement were committed in one county, and the injury resulted to resi-

dents of another, the prosecution was properly brought in the latter. In the case from which we have just quoted, upón an examination, we find the facts to be iń all essential respects identical to those of the case now before us. In that case the indictment charged the defendant with having deposited filth, offal, etc., in Linn creek, in Marshall county, Iowa, and suffered them to flow down the Iowa river, through Taina county, and causing an injury in the latter county, in which county the defendant was indicted. After quoting the above statute, the supreme court of Iowa says: "This provision of the statute appears to us to be decisive of the question of jurisdiction. It is plain that just such offenses as this are contemplated and provided for by this act."

Garrett on Nuisances, p. 342, construing a similar English statute takes a like view, and says: "And it may be further noticed, that under 7 Geo. IV, c. 64, s. 12, where a misdemeanor is begun in one county and completed in another, the venue may be laid in either county, an enactment which it is submitted would apply to many cases of nuisance, such as pollution of air and running water." The supreme court of Arkansas in the case of the *State* v. *Chapin*, 17 Ark. 561, states the rule as follows: "It is not necessary in all cases, that a man should be actually present in this state to make him amenable to our laws for a crime committed here. If the crime is the immediate result of his act, he may be made to answer for it in our courts, though actually absent from the state at the time he does the act, because he is constructively present, or present in contemplation of law. For example, if a man standing beyond our boundary line, in Texas, were, by firing a gun, or propelling any other implement of death, to kill a persoṇ in Arkansas, he would be guilty of murder

here, and answerable to our laws, because the crime is regarded as being committed where the shot, or other implement propelled, takes effect." We think what we have here said, and what was said in the *State* v. *Herring, supra,* effectively disposes of all questions presented, adversely to the appellee, and, upon the authority of that case and what we have here said, the judgment of the Cass Circuit Court is reversed, and it is directed to overrule the appellee's motion to quash the second count of the indictment.

### ON PETITION FOR REHEARING.

WILEY, J.—The appellee has filed a petition for a rehearing, and supported the same in a vigorous brief. While the petition assigns six alleged errors for which a rehearing should be granted, there are in fact but two questions raised and discussed, to wit: (1) That the court erred in holding that the Miami Circuit Court had jurisdiction; and, (2) that the court erred in holding that the indictment was sufficient in matter of form and substance.

On the question of jurisdiction, appellee has not, in its brief, thrown any new light upon the question, nor cited us to any authority contrary to our holding in the original opinion. We have, however, re-examined the question with considerable care, and we have no doubt but that we reached a correct conclusion, and to that conclusion we strenuously adhere.

We will now notice the second proposition discussed by the learned counsel for appellee in his brief on the petition for rehearing. Is the indictment sufficient in matter of form and substance? It is earnestly insisted by counsel that the indictment does not state facts which constitute an offense, and bases this insistence upon the proposition that it is not alleged or shown in the indictment that the offense was com-

State *v.* Wabash Paper Co.

mitted in a public place, or that the public were affected thereby. It must be conceded that if the indictment does not show this, it is bad, and a rehearing should be granted. It was evidently the purpose and intention of the legislature in enacting the statute upon which this prosecution is based, to protect the public as far as possible from the dangers, nuisance, and evils arising from the pollution of natural streams of water; and if the indictment does not show upon its face that the Wabash river was a public place at the point where it is charged that the offensive, etc., matter was discharged into the river, and where it was suffered to accumulate, or that the public were affected thereby, then it does not show a violation of the statute, and this prosecution should fail. In support of the contention that the indictment does not state an offense, appellee cites the following cases: *Mains* v. *State*, 42 Ind. 327, 13 Am. Rep. 364; *State* v. *Houck*, 73 Ind. 37.

We do not think these cases support the theory of appellee. In the first case cited, appellant was indicted for keeping a disreputable house, "to the great damage and common nuisance of all the citizens of the state of Indiana." It was not averred in the indictment where the house was situated, except as to the county and state. It was not charged that the house was situated in any public place, as in a city, town or village, nor near any public street or highway; nor did it allege that anyone resided near thereto, or that they were in the habit of passing thereby. It did not appear that the house was even in the vicinity of any inhabitants. The averment in the indictment that it was to the great damage and common nuisance of all the citizens of the State was a mere conclusion, and the indictment was held bad. In the second case, appellees were indicted for maintaining a slaughter house,

to the injury of all the citizens of the State, etc. It not appearing in the indictment that the slaughter house was in a public place, etc., the Supreme Court held that it did not state any offense.

The cases cited differ materially from the one we are here considering. In the indictment before us, it is directly charged that the offense was committed by appellee, by discharging into the Wabash river, in Wabash and Miami counties, the offensive and noisome substances constituting the nuisance. If the Wabash river is a public highway, then it affirmatively appears in the indictment that the offense was committed in a public place, and to the damage and nuisance of the public. Again, if the Wabash river is a navigable stream, then, under the authorities, it is a public highway, and a public highway is a public place.

By the act of March 6, 1804, section 6, Vol. 2, U. S. Statute at Large, p. 279, it was provided by congress that, "All navigable rivers, creeks and waters, within the Indiana territory, shall be deemed to be and remain public highways." It must follow from this act of congress, that so much of the Wabash river as was in fact navigable in 1804, must be held navigable now, and is to remain a "public highway." In the Western Gazetteer for 1817, p. 39, the Wabash river was said to be navigable for keel boats for 400 miles from its mouth; and at page 73, it was said, that it was navigable for 470 miles. In 1819 there was a reprint of the Gazetteer in Ireland, and at pages 40 and 75 the same statements are made. In the Indiana Gazetteer published in Indianapolis in 1850, at page 21, it was stated, that the Wabash river was navigable for 450 miles. In the ordinance of 1787 (R. S. 1881, p. 1430), Art. 4, it is provided: "The navigable waters leading into the Mississippi and Saint Law-

rence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory, as to the citizens of the United States, and those of any other state that may be admitted into the Confederacy."

It is a matter of public history that the Wabash river was used as a public highway between its mouth at the Ohio river and the portage somewhere between Huntington and Fort Wayne, for many years prior to the time when George Rogers Clark drove the British from Fort Vincennes by this route up into Canada, February 25, 1778. In the case of *Depew* v. *Board, etc.*, 5 Ind. 8, the Supreme Court held that the ordinance above cited has been adopted and recognized by congress and is a valid and subsisting law of the United States. See, also, *Neaderhouser* v. *State*, 28 Ind. 266; Cooley on Const. Law, p. 26. January 23, 1829, the legislature passed an act entitled "An act relative to navigable streams declared highways by the ordinance of Congress of 1787." Acts 1829, p. 79. . It was there provided: "Every person or persons, who shall erect and keep, or who may have erected, and shall continue to keep, any mill dam, or other artificial obstruction, across the bed, or channel of any stream, or river, which is navigable, and the bed or channel of which has not been surveyed and sold as land by the United States, shall upon conviction by indictment, be fined in any sum not less than $3 nor more than $500, for every week any such obstruction may be kept and continued." Even as late as 1850, the legislature passed an act authorizing William McDowell, of Adams county, to erect a mill dam across Wabash river, in said county. Local Laws 1850, p. 175. This act provided that said dam was "not to exceed six feet in height, with suit-

able slope or lock so as not to interrupt the naviga-
tion of said river, when the river is in the proper
stage for the same." In *Dawson* v. *James*, 64 Ind. 162,
it was held that the Wabash river was a navigable
stream, the bed of which had never been surveyed or
sold. Courts take judicial knowledge of the geog-
raphy of the country, and hence judicially know that
Wabash and Miami counties are less than 400 miles
distant from the mouth of the Wabash river. We
also judicially know that the cities of Wabash and
Peru, and other towns, in said counties, are situated
on the banks of such river.

From what we have said, and the authorities cited,
we think it must be held that the Wabash river is a
navigable river, and hence a public highway, and as it
is a public highway, it is, under the authorities, a
"public place." It was therefore a "public place" where
the appellee unlawfully caused and suffered certain
offal, filthy and noisome substances  *   *   *   to be
collected and remain in  *   *   *   the Wabash
river," etc., "to the damage and prejudice of the pub-
lic."

A public highway is *prima facie* a public place, and
so it has been held. *State* v. *Moriarty*, 74 Ind. 103;
*Rosenstine* v. *State*, 9 Ind. App. 290; *State* v. *Berdetta*,
73 Ind. 185, 38 Am. Rep. 117. In *State* v. *Moriarty*,
*supra*, appellee was indicted for having been found in
a state of intoxication in a "public street, highway
and sidewalk." The court said: "The indictment, in
charging that the offense was committed in a public
street, shows at least a *prima facie* case." As the of-
fense charged in the case before us is shown by the
indictment to have been committed in a public place,
it is sufficient to apprise the appellee of what it stands
charged, and is a substantial compliance with the

statute. The second count of the indictment is not subject to the objections urged against it, and is, in our judgment, good. Petition overruled.