## BREDENDERF *v.* STATE OF INDIANA.

[No. 24,228. Filed December 5, 1923.]

1. TRIAL.—*Instructions.—Reversible Error.*—Before a court will declare an erroneous instruction to be reversible error, it must be satisfied that the alleged erroneous language, when considered as a part of the entire charge, is harmful to the complaining party. p. 679.

2. CRIMINAL LAW.—*Reasonable Doubt.—Instructions.—Reversible Error.*—An instruction on reasonable doubt which defines it, and contains the phrase "and leaves the mind in such condition that you do not feel an abiding satisfaction to a moral certainty of the truth of the charge, but there remains in the mind an uncertainty, which, if interposed in the graver transactions of life, would check your final judgment and cause you to pause and hesitate," cannot be regarded as reversible error in view of the evidence and other instructions on reasonable doubt and proof to a moral certainty. p. 681.

3. CRIMINAL LAW.— *Accomplice.— Instructions.— Harmless Error.*—An instruction which mentions a witness by name and states: "He is what in law is known as an accomplice. An accused may be convicted on the testimony of an accomplice. But the testimony of an accomplice should be closely scrutinized and cautiously received," etc., may be objectionable for assuming that the witness is an accomplice, but cannot be regarded as reversible error, in view of the evidence which showed conclusively that the witness had accomplices and successfully defeated the defendant's defense of alibi. p. 681.

4. CRIMINAL LAW.—*Accomplice.*—*Instructions.*—An instruction which tells the jury that "an accused may be convicted on the testimony of an accomplice," but also tells them that "the testimony of an accomplice should be closely scrutinized and cautiously received," is not error.  p. 683.

From Lake Criminal Court; *Martin J. Smith*, Judge.

Prosecution by the State of Indiana against George Bredenderf for grand larceny.  From a judgment of conviction, the defendant appeals.  *Affirmed.*

*William J. McAleer, Francis J. Dorsey, Gerald A. Gillett* and *Perry R. Chapin*, for appellant.

*U. S. Lesh*, Attorney-General, and *Connor D. Ross*, Deputy Attorney-General, for the State.

MYERS, J.—Appellant, upon an affidavit filed in the court below, was tried and convicted of the crime of grand larceny, as defined by §2269 Burns 1914, Acts 1905 p. 584.  Appellant's motion for a new trial was overruled, and judgment followed pronouncing sentence in the penalty as provided by statute.  The only error assigned is the overruling of his motion for a new trial.

Appellant relies entirely upon alleged errors of the court in giving instructions Nos. 8 and 15 upon its own motion.  Instruction No. 8 was upon the subject of reasonable doubt, and is as follows:

"By a reasonable doubt is not meant a mere whim or speculative doubt.  The jury is not at liberty to indulge in purely speculative doubt.  A reasonable doubt may be generated by a lack of evidence as to some material fact or facts constituting the charge, as well as from the evidence in the case.

"A reasonable doubt is one that arises naturally and spontaneously in the mind after a fair and impartial consideration and weighing of all of the evidence in the case and a determination and application of the law of the case, and leaves the mind in such condition that you do not feel an abiding satisfaction to a moral cer-

tainty of the truth of the charge, *but there remains in the mind an uncertainty, which, if interposed in the graver transactions of life, would check your final judgment* (our italics) and cause you to pause and hesitate.

"Proof beyond a reasonable doubt is such proof as satisfies the judgment and conscience of each juror so that you can say from all of the evidence before you in the case that the crime charged was committed by the accused and that you are satisfied thereof to such degree of certainty that you would feel safe to act thereon in a matter of the highest import, affecting your own dearest interests, and in a case where you would be free to act or not, as you might choose."

Appellant has singled out the clause we have italicized and insists that it was harmful as a part of the definition of "reasonable doubt," in that it excluded that character of uncertainty that would cause a juror to pause and hesitate in the ordinary and commonplace transactions of life. He makes the point that any doubt that would cause a juror to pause and hesitate, even though it arises out of a transaction that can in no wise be denominated one of the graver transactions of life, is such a reasonable doubt as forbids a conviction in a criminal case. In support of this contention he cites *Brown* v. *State* (1886), 105 Ind. 385; *Blue* v. *State* (1910), 86 Nebr. 189, 125 N. W. 136; *State* v. *Reed* (1874), 62 Me. 129; *Commonwealth* v. *Miller* (1890), 139 Pa. St. 77, 21 Atl. 138, 23 Am. St. 170; and, *Boughan* v. *State* (1923), *ante* 66, 138 N. E. 87.

The instruction in the Brown case was criticized, but the only error in it pointed out was that it was liable to mislead the jury into the belief "that in order to justify an acquittal, the doubt of the defendant's guilt must arise out of the evidence," when the want of evidence might be just as effective in authorizing an acquittal. It was then said: "In order to justify a

conviction the evidence must be such as to produce in the minds of prudent men such certainty that they would act upon the conviction produced without hesitation in their own most important affairs."

In the Blue case, the jury was told that "a reasonable doubt is such a doubt as you are able to give a reason for." This instruction was held bad for the reason that a juror would thereby understand that if called on to give a reason for such doubt "he would feel bound by this instruction to do so or to abandon his convictions."

In the Reed case, an instruction purporting to tell the jury what constituted a reasonable doubt was assailed upon the theory that it left out "an important element necessary to give the jury a full understanding of their duties in this respect; namely, the moral certainty of the truth of the charge to authorize conviction." The court, after analyzing the challenged instruction, held that it fully covered the objection urged against it.

The trial court, in the Miller case, on the question of reasonable doubt, said: "It is such a doubt as would influence or control you in your actions in any of the important transactions of life." On appeal, this instruction was condemned for the reason "that a doubt that would cause one to pause and hesitate was, if fairly derived from the evidence, a reasonable one within the meaning of the criminal law * * *. A doubt that would control our actions in the important transactions of life would be one that was so strong as not to be overcome by the balancing process. Such a doubt would be practically an unconquerable one. It would lead us, not simply to refrain from acting, but to act."

The questioned instruction in the case at bar was given word for word in the Boughan case, where it was held erroneous and the judgment therein reversed and a new trial ordered. The one sentence of the instruction is technically inaccurate and might be regarded as

harmful only in a case of bare possibility of evidence to sustain a conviction, as was pointed out in the Boughan case. However, courts should not and will not seize upon every erroneous or inaccurate statement in

1. an instruction to reverse a judgment. They must not only be erroneous or inaccurate, but from the record, the reviewing court must be satisfied that the alleged erroneous language, when considered as a part of the entire charge, was harmful to the complaining party. *Eacock* v. *State* (1907), 169 Ind. 488; *Hiatt* v. *State* (1920), 189 Ind. 524; *Wiegand* v. *State* (1912), 178 Ind. 623; *Rollins* v. *State* (1878), 62 Ind. 46, 51; *Commonwealth* v. *Webb* (1916), 252 Pa. St. 187, 194, 97 Atl. 189. •

Text-writers and courts of review have given the expression "reasonable doubt" much thought and space in reaching the conclusion that no very satisfactory definition of the phrase can be given. Nevertheless, an examination of the many decided cases in this jurisdiction will furnish abundant proof of numerous attempts on the part of our nisi prius courts to coin a more improved definition of the words "reasonable doubt" than the one given by Chief Justice Shaw in his charge to the jury in *Commonwealth* v. *Webster* (1850), 5 Cush. (Mass.) 295, or as expressed by this court in *Bradley* v. *State* (1870), 31 Ind. 492, wherein the definition of these words, as defined in *Arnold* v. *State* (1864), 23 Ind. 170, was condemned because the standard of certainty therein fixed was too low. In the Bradley case, after quoting from Starkie, Evidence (10th Am. ed.) *p. 865, and adding thereto the statement "that it must be such a conviction of the truth of the proposition that a prudent man would feel safe to act upon the conviction under circumstances where there was no compulsion resting upon him to act at all," the court concluded by announcing the test, in substance, that the

moral certainty which should alone authorize a conviction "must be such a certainty as would justify to the mind action, not only in matters of importance, but in those of the highest import involving the dearest interests."

We will not attempt to review the many decisions of this court wherein the question of defining reasonable doubt arose, since from all that has been said, unguarded and otherwise, apparently to no purpose, it seems useless to make any further suggestions, and hence we must be content to consider each particular case upon its merits.

Returning to the instant case, the record before us discloses evidence to the effect that appellant and two other persons, between 1:30 and 4:30 o'clock in the morning of September 12, 1920, broke open a car of the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company while the same was attached to a train and moving slowly between Schererville and Crown Point in Lake county, Indiana; that appellant and one other entered the car, threw out five boxes, four of which contained shoes and the other face powder, and all of the aggregated value of $218. Police officers, in the employ of the railroad company, while riding upon this particular train and on the lookout for any depredation which might occur, on seeing boxes thrown from the car, alighted from the train and arrested a person who afterwards admitted his connection with the pillage, and named appellant and two others as his associates. These officers also testified that the boxes were thrown from the car near a public highway, and that they saw two other persons get into an automobile standing on the highway not far from the railroad track and drive west.

In view of this evidence, and when instruction No. 8 is read in connection with other instructions bearing

generally on that subject, properly defining the law on presumption of innocence, the reasons for this law, the possibility of not proving guilt to a mathematical demonstration, requiring proof to a moral certainty, defining moral certainty, and the further explanation of reasonable doubt in instructions Nos. 9 and 10, we are compelled to hold that no harmful error intervened by the giving of instruction No. 8, although it contained what may be regarded an objectionable clause. *Cunacoff* v. *State* (1923), *ante* 62, 138 N. E. 690; *Heyl* v. *State* (1887), 109 Ind. 589; *Harris* v. *State* (1900), 155 Ind. 265; *Benedick* v. *State* (1923), *ante* 79, 138 N. E. 822; *State* v. *Krampe* (1913), 161 Iowa 48, 57, 140 N. W. 898.

Instruction No. 15 follows: "Clyde Losse has testified as a witness. He is what in law is known as an accomplice. An accused may be convicted on the testimony of an accomplice. But the testimony of an accomplice should be closely scrutinized and cautiously received. If upon due scrutiny the testimony of an accomplice is found to be satisfactory, the jury may give it credit. The degree of credit to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. The jury may, if they see fit, act upon the testimony of an accomplice and convict upon such testimony without any corroboration or confirmation."

It is insisted that the court, by this instruction, invaded the province of the jury by singling out the witness Clyde Losse, and then saying to the jury that "he is what in law is known as an accomplice." It is also claimed that the evil of that statement is emphasized by the one following it, namely: "An accused may be convicted on the testimony of an accomplice." Appellant takes the position that the questioned sentence in the instruction was a declaration

that Losse was an accomplice which was obviously contrary to a correct statement that he was to be so treated only if the jury so found from all the evidence. The point made against this instruction is not without some merit, justly entitling it to criticism. However, we cannot fully approve appellant's insistence.

We have carefully examined the record and briefs of counsel without being convinced that the objection urged to the instruction is one of such importance as to work a reversal of the judgment. Whether appellant and the witness were associated in the criminal act was a question of fact manifestly left to the jury, notwithstanding the court's statement that "he is what in law is known as an accomplice." The evidence shows beyond question that the witness, although a confessed thief, had accomplices. Hence, the question—Who were they? An answer to this question was the gist of the whole trial. The defense was an alibi. Appellant and the witness Losse were railroad switchmen with an acquaintance of about a year immediately prior to the alleged offense. While appellant did not testify, yet he produced several witnesses who did testify that he was in and about the railroad switchmen's headquarters, Thirty-eighth St. and Archer Ave., Chicago, at or about the time there was evidence tending to show the crime was committed. Without a finding that appellant participated in the alleged offense, there could be no conviction. Appellant was convicted. Hence, we may assume that the truthfulness of Losse's testimony was put to the crucial test and given some weight by the jury, although corroborated in part only. The finding that Losse, with others, offended the law in the particular charged, brought him within the definition of an accomplice. Bouvier's Law Dic., (Rawle's 3d ed.).

While this same instruction told the jury that "an

accused may be convicted on the testimony of an accomplice," they were also told that "the testi-
4. mony of an accomplice should be closely scrutinized and cautiously received," and upon due scrutiny, it may be given credit. All of that part of the instruction aside from the sentence of which complaint is made is in line with the decisions of this court. *Schuster* v. *State* (1912), 178 Ind. 320; *Conway* v. *State* (1889), 118 Ind. 482; *Brewster* v. *State* (1917), 186 Ind. 369.

Upon the whole record in the instant case, we are satisfied that when the instructions are considered in their entirety, they were not harmful to appellant.

Judgment affirmed.