## MOORE v. STATE OF INDIANA.

[No. 25,029.   Filed October 7, 1926.   Rehearing denied December 14, 1926.]

1. CRIMINAL LAW.—*Constitution does not forbid giving instruction defining reasonable doubt.*—The Constitution does not forbid the giving of an instruction declaring the law applicable to a case on trial, including the law defining reasonable doubt. p. 552.

2. CRIMINAL LAW.—*Modification of instruction on "reasonable doubt" held not reversible error.*—The modification of an instruction on the subject of "reasonable doubt" by adding "as defined in these instructions" was not reversible error where an accurate definition of reasonable doubt was given in another instruction. p. 552.

3. CRIMINAL LAW.—*Verbal inaccuracies in instructions not reversible error unless prejudicial.*—A judgment will not be reversed for mere verbal inaccuracies in instructions which are not shown to have prejudiced the rights of the defendant and which could not probably have had that effect. p. 552.

4. CRIMINAL LAW.—*Refusal to give instruction as to degree of proof required to convict on circumstantial evidence not error.*— The refusal to give instructions as to the degree of proof required to convict on circumstantial evidence was not error

where conviction was sought on direct testimony of witnesses as to the facts, although evidence of corroborating circumstances was introduced.  p. 553.

5.  CRIMINAL LAW.—*Instruction as to disregarding, all the testimony, of witness who had testified falsely properly, refused.*— The court properly refused to give an instruction singling out two of the witnesses and stating that if the jury believed either one had testified falsely, then all of his testimony might be disregarded, as such an instruction should apply, to all the witnesses in the case.  p. 553.

6.  CRIMINAL LAW.—*Instruction as to considering facts and circumstances in evidence held proper.*—An instruction that the jury could consider certain enumerated facts, "together with all the other facts and circumstances adduced as evidence" and bearing on the issues, was not error where the facts and circumstances were fairly stated and the court did not indicate the weight to be given them or limit the jury to a consideration of only part of the facts and circumstances.  p. 554.

7.  CRIMINAL LAW.—*Judicial notice taken of distance between Evansville and point on White river.*—The courts will take judicial notice that a point on White river about seven miles west of Patoka in White River township of Gibson county, is about thirty-five or forty miles from Evansville.  p. 554.

8.  CRIMINAL LAW.—*Instruction that jury could consider distance between certain places not prejudicial where such distance is matter of common knowledge.*—An instruction that jury could consider the distance between the home of the defendant and the place where the crime was charged to have been committed would not be misleading where such distance was matter of common knowledge, though not shown by the evidence.  p. 554.

9.  CRIMINAL LAW.—*Brief must, show objection to ruling, admitting evidence to have review of ruling, thereon.*—Objections to the admission of evidence will not be reviewed on appeal unless appellant's brief shows the specific objections made in the trial court, as no other objection is available.  p. 555.

10.  CRIMINAL LAW.—Only the objections to the admission of evidence made in the trial court are available on appeal.  p. 555.

11.  CRIMINAL LAW.—*Marginal note of name of each witness and whether examination is direct, cross or redirect must be made, on each page of the transcript containing, testimony.*—Where the evidence is set out in the transcript, Rule 3 of the Supreme Court requires a statement on the margin of each page of the name of the witness and whether the examination is direct, cross or redirect, and the rule is not complied with by stating these facts on the initial page of each witness' testimony.  p. 555.

12. CRIMINAL LAW.—*Transcript as amended by certiorari imports absolute verity and must be accepted as true on appeal.*— The transcript of the record as amended by *certiorari* to conform to corrected record imports absolute verity and must be accepted as true by the Supreme Court in deciding an appeal. p. 557.

13. CRIMINAL LAW.—*Duty of appellant's counsel after correction of transcript to conform to correction of record in trial court.*—Where the transcript of the record has been amended by *certiorari* to conform to a correction of the record in the trial court, it is the duty of appellant's counsel to familiarize himself with the corrected transcript and the brief of the state showing the correction, as he is bound to know that the Supreme Court, under Rule 22, subdivision 5, will assume that statements in appellee's brief as to the correction made are true where not controverted by appellant.  p. 557.

From Gibson Circuit Court; *Claude A. Smith,* Judge.

Cleve Moore was convicted of having encouraged, hired and commanded others to have in their possession a still and distilling apparatus for the manufacture of intoxicating liquor, and he appeals.  *Affirmed.*

*Hovey C. Kirk,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

EWBANK, J.—An affidavit in two counts charged that on March 13, 1925, appellant unlawfully and feloniously counseled, encouraged, hired and commanded Sam Beach and Joe Beach:    (1) Feloniously to have in their possession and under their control a still and distilling apparatus for the manufacture of intoxicating liquor in violation of the laws of this state; and (2) feloniously to use and operate such a still and apparatus for said purpose, which acts those two persons were duly alleged feloniously to have done.   The jury returned a verdict finding appellant guilty as charged in the first count. Overruling his motion for a new trial is assigned as error, under which he complains of the giving of cer-

tain instructions, the refusal to give certain others, and the admission of certain evidence.

There was evidence that, with a search warrant authorizing him to do so, the sheriff went to the club house at Smith's Camp, on the bank of White river, at which Sam Beach and Joe Beach were staying, and in one room of the house—"a little corner room, boxed off"—found a distilling apparatus, full of mash, sitting on a stove, and warm, though the fire was turned out; that Sam Beach had delayed the officers a long time before they got into the house; that they also found a barrel of mash in the attic, with a rubber hose leading from it to the still, and found a gallon jug and two bottles full of white mule whisky in the house; that both Sam and Joe Beach pleaded guilty to the charge of having the still and distilling apparatus in their possession and under their control; that the father of appellant's wife (with others) had built the club house on lands held under a lease, and, becoming sole owner, he had occupied it until his death, after which appellant had held possession under the lease for five years, paying $50 a year as rent, and subleasing to persons who camped there while fishing and hunting; that Sam Beach had been employed by appellant as caretaker for about a year, and, through the fall and winter months, his brother, Joe Beach, had been staying there with him; and that appellant lived in Evansville and usually came up to the camp on Sundays, and frequently came on other days in the hunting season. Both Sam Beach and Joe Beach were witnesses for the state. Both testified that appellant told Joe Beach to order a still and have it shipped to Mt. Carmel, and that he would go with his car and get it; that he borrowed from Sam Beach the money with which the first payment on the still was made, and, when they received notice that it had reached Mt. Carmel, he gave Joe Beach $10.50, and said for Joe and Sam to go down

with the boat and get it, and they brought the can and lid up from Mt. Carmel; that appellant brought the coils they used from Evansville and also brought a barrel and a keg, and some sugar and meal and yeast and "stuff to set the barrel," and helped to set up the still and to put it in operation; that he measured the walls and promised to bring out some lumber to carry the partition of the little corner room up to the ceiling; that appellant had driven over into Kentucky with Joe Beach in search of a still before this one was ordered and had taken him to see a man there in an effort to buy one; that afterward appellant sent Joe Beach to Mt. Carmel with a wagon to get some of "the ingredients to make the second batch" of whisky; that he gave Joe $10 with which he purchased sugar, yeast and meal; that appellant came out and said he had wicks for the stove, which his wife put into it, and also brought five gallons of coal oil; that he helped to strain the stuff off from the barrel to the can and helped to carry it to the little room, and after it was drained, helped to empty the barrel over the river bank; that each time Sam and Joe Beach made whisky there, appellant took some of it away with him; that appellant gave Joe Beach something more than $7 to use in purchasing sugar and meal at Mt. Carmel to prepare the "third batch," which was in the barrel and the still when the sheriff came, and at that time said "that the next that was set he wanted two gallons to take to town"; that after the still was brought there, appellant said to go ahead and make whisky, and he could "get shut of it all"; and that he had been at the club house in the evening before the place was raided and the still seized. Appellant denied all knowledge of the still being there and all participation in obtaining it, setting it up, or obtaining materials from which to make whisky, or that he received or drank any of the whisky made there, and introduced

evidence that his general moral character was good and that the witness, Joe Beach, had made threats against him.

Appellant complains that, instead of giving an instruction asked by him, the court modified it by inserting and adding the words which we have italicised below, and gave it in the following language: "In this case the law contemplates the concurrence of twelve minds in the conclusion of guilt before a conviction can be had. Each juror must be satisfied, beyond a reasonable doubt, of the defendant's guilt before he can, under his oath, consent to a verdict of guilty as charged. Therefore the court instructs you that if any one of the jury, after having consulted with his fellow jurymen, entertains such a reasonable doubt, *as defined in these instructions,* such jurors so entertaining such reasonable doubt should not consent to, or join in a verdict of guilty. *On the other hand, it is equally established as the law that any juror who is convinced of the defendant's guilt to the exclusion of a reasonable doubt, as defined in these instructions, should not consent to or join in a verdict of not guilty.*"

The only objection to this instruction suggested by counsel is in qualifying "reasonable doubt" by the words "as defined in these instructions," counsel insist-

1-3. ing that "the jury has the right to determine what constitutes reasonable doubt." The use of such a qualifying phrase is not to be commended. But the Constitution does not forbid the court to give instructions declaring what is the law applicable to the case, including the law defining reasonable doubt. *Hinshaw* v. *State* (1919), 188 Ind. 447, 460; *Morgan* v. *State* (1921), 190 Ind. 411, 415, 130 N. E. 530. And, by its sixth instruction, the court had given a definition of reasonable doubt, many times approved by this court as correct, nor does the appellant suggest that anything

but a full and accurate definition of reasonable doubt was contained in any of the instructions given. A judgment will not be reversed for mere verbal inaccuracies not shown to have prejudiced the rights of the defendant and which could not probably have had that effect. *Bredenderf* v. *State* (1923), 193 Ind. 675, 679, 141 N. E. 611; *Weigand* v. *State* (1912), 178 Ind. 623, 626, 99 N. E. 999.

Appellant asked two instructions as to the degree of proof required before a defendant can be convicted "on circumstantial evidence alone." But since a con-

4.   viction was sought in the case at bar upon the direct testimony of witnesses, part of which we have set out, and not on circumstantial evidence, except as the circumstances proved may have tended to corroborate what the witnesses testified, no error was committed in refusing to give them. Instructions must be applicable to the case as made by the evidence. Neither have counsel suggested any defect in the instruction No. 15, given by the court, as applied to the proof of circumstances in aid of direct testimony of witnesses that defendant committed the crime as charged. And since the case was largely made out by direct testimony, decisions which declare the law governing cases where the evidence was wholly circumstantial do not apply. *State* v. *Wilson* (1924), 32 Wyo. 37, 228 Pac. 803; *Aday* v. *State* (1924), 230 Pac. (Okla. Cr. App.) 280; *State* v. *Johnson* (1923), 252 S. W. (Mo.) 623.

Fourteen witnesses, including the alleged accomplices of appellant, testified on behalf of the state, and sixteen, including the defendant himself, testified

5.   for the defense. An instruction was asked by appellant which would have named two only of all these witnesses, and would have told the jury that if they believed either or both of those two witnesses

had testified falsely as to any material facts, all of their testimony might be disregarded. Refusal to give such an instruction was not error. The court is not bound, nor does it have the right, to single out certain of the witnesses by name and disparage their evidence by suggesting that they may have testified falsely. An instruction touching the right to disbelieve all the testimony of a witness found to have testified falsely should apply to all the witnesses in the case. And the trial court gave such a general instruction in the case at bar.

The court gave an instruction that if the jury found Sam and Joe Beach to have committed the offense charged, then, in determining whether or not appellant did counsel, encourage, hire or command them to commit that offense, the jury might take into consideration certain enumerated facts testified to by the witnesses, if from the evidence the jury found that those were facts, "together with all the other facts and circumstances adduced as evidence upon the trial of this cause, and bearing upon the issues." Giving such an instruction is not error where the facts and circumstances of which there is evidence are fairly stated, and the court refrains from indicating the weight to which he thinks they are entitled, and from saying anything which tends to limit the jury to a consideration of only part of the facts and circumstances of which there is evidence, to the exclusion of others. *Koerner* v. *State* (1884), 98 Ind. 7, 17, 18; *White* v. *State* (1899), 153 Ind. 689, 690, 692, 54 N. E. 763; Ewbank, Criminal Law §482.

Among the facts which the jury was told it might take into consideration, if it found them to be established by the evidence, were the facts that appellant lived in the city of Evansville and did certain acts at Smith's Camp, and "the distance

of the city of Evansville from Smith's Camp in which the still or distilling apparatus was located." And appellant insists that the evidence did not show what that distance was. But there was evidence that Smith's Camp was located on the south bank of White river, in the west half of the northwest fractional quarter of section 24, township 1 south, range 12 west and that it was seven miles west of Patoka, and was in White River township of Gibson county. From these facts, the court has judicial knowledge that Smith's Camp is about thirty-five or forty miles from Evansville, by the customary routes of travel. *Ward* v. *Colyhan* (1868), 30 Ind. 395, 397; *Hipes* v. *Cochran* (1859), 13 Ind. 175, 177, 178; *Fitzpatrick* v. *Papa* (1883), 89 Ind. 17, 20; *Terre Haute, etc., R. Co.* v. *Pierce* (1884), 95 Ind. 496, 502; *State* v. *Wabash Paper Co.* (1897), 21 Ind. App. 167, 176, 51 N. E. 949; *Cleveland, etc., R. Co.* v. *Miller* (1907), 40 Ind. App. 165, 167, 81 N. E. 517. And we cannot assume that jurors in Gibson county were so ignorant of this matter of general knowledge that a reference to the distance between the two places would mislead them to appellant's prejudice.

Complaint is also made because witnesses were permitted to answer certain questions. But it does not appear from the briefs what objections were made 9-11. to those questions in the court below, nor, in fact, that any grounds of objection were stated; and objections which were not made in the trial court are not available as cause for reversal on appeal. *Musser* v. *State* (1901), 157 Ind. 423, 431, 61 N. E. 1; *Howard* v. *State* (1921), 191 Ind. 232, 243, 131 N. E. 403. Moreover, Rule 3, of the Supreme Court which requires that "where the evidence is set out * * * the name of each witness, and whether the examination is direct, cross or redirect, shall be stated on the margin of each page" has not been complied with. Supplying a mar-

ginal note on the first page of the testimony of each witness is not a sufficient compliance with this rule, where the testimony fills hundreds of pages that contain no marginal notes. No question is presented upon the exceptions to the admission of evidence.

The judgment is affirmed.

## On Petition for Rehearing.

Ewbank, J.—In his original brief, counsel for appellant complained of an alleged error in giving instruction No. 19, as copied in that brief from the original transcript. But the return to a writ of *certiorari* disclosed that the instruction which the court really gave told the jury that if Sam Beach and Joe Beach were found to have been guilty of the felony charged, "and if you further find from the evidence beyond a reasonable doubt that the defendant, Cleve Moore, did before the committing of said felony * * * unlawfully and feloniously *counsel, encourage, hire or command the said Sam Beach* and the said Joe Beach to do and commit said felony, then you are instructed that you should find the defendant, Cleve Moore, guilty," etc., and that in a proceeding to correct the record below, the trial court found the words above italicized to have been part of the instruction given, but to have been omitted from the instruction as set out in the bill of exceptions obtained by appellant and copied into appellant's brief, and that the bill of exceptions was thereupon corrected accordingly by a proper decree. After the return to the writ of *certiorari* had been made, appellee filed a brief in which was set out the fact that the bill of exceptions had been so corrected, and that the instruction complained of really was not erroneous in the particulars complained of. The return to the writ also showed that counsel who represent appellant in this court appeared for him in the trial court, resisted the applica-

tion to correct the record, and, on his behalf, reserved exceptions to the filing of the application to correct it, and also to the ruling of the court sustaining the motion and ordering that the record be corrected.

Under these circumstances, counsel was bound to know that the transcript as amended by *certiorari* "imports absolute verity," and must be accepted as 12, 13. true by the Supreme Court in deciding the appeal. Ewbank's Manual, (2d ed.) §§208, 210, 211. And in filing this petition for rehearing, it was his duty to familiarize himself with the corrected transcript, and with the briefs of the adverse party reciting the instruction as it was shown by the corrected transcript to have been given to the jury, and to know that the Supreme Court would decide the case on the assumption that instruction No. 19 was given in the words set out in appellee's brief, especially as appellant did not file a reply brief controverting any of the statements in his adversary's brief. Rule 22, cl. 5, Supreme Court; *Milburn* v. *Phillips* (1893), 136 Ind. 680, 699, 36 N. E. 360; Elliott, Appellate Procedure §443; Ewbank's Manual (2d ed.) §181a.

The petition for a rehearing is overruled.