Bernard G. PAGE, Appellant,

v.

STATE of Indiana, Appellee.

No. 978S194.

Supreme Court of Indiana.

Oct. 2, 1979.

Harriette Bailey Conn, Public Defender, David P. Freund, Marcia L. Dumond, Deputy Public Defenders, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Bernard G. Page was convicted in Monroe Superior Court No. 3 of robbery, Class B, Ind.Code (Burns 1979 Repl.) § 35–42–5–1, and of being a habitual offender, Ind.Code (Burns 1979 Repl.) § 35–50–2–8. He was sentenced to a term of twenty years for robbery while armed with a deadly weapon, and an additional thirty years for being a habitual offender.

Appellant raises no question concerning his conviction for robbery. The evidence showed that on October 7, 1977, Mary Bradley was working at the Shortstop Food Market in Monroe County. At about 9:00 p. m., appellant came into the store under the pretense that he had lost money in the soft drink machine. He then pulled a gun on Mary Bradley and ordered her to put money from the cash register into a brown paper sack. While she was doing so, Joseph Pawlowski came into the store, and he also was robbed at gun point by Page. After the jury found appellant guilty of robbery, the State presented evidence that appellant had been twice convicted of unrelated felonies, arson and burglary, in New Hampshire, and had served a prison sentence for each conviction. The jury found appellant to be a habitual offender.

The issues appellant presents arise primarily from his habitual offender conviction. Those issues are: (1) whether there was sufficient evidence as a matter of law to support the jury's verdict on the habitual offender charge; (2) whether the trial court erred in admitting State's exhibit number one into evidence during the habitual offender phase of the trial; (3) whether the trial court erred in allowing State's witness Barbara Webb to testify as an expert witness; (4) whether the court erred in overruling defendant's motion to strike the testimony of State's witness Mary Bradley; and (5) whether the trial court erred in sentencing Page to a term of imprisonment for the robbery conviction as well as for the habitual offender conviction. We shall consider the first and second issues together.

I.

One of the specifications in the information charging appellant with being a habitual offender was that he was convicted of arson in "Hills County, New Hampshire." The evidence showed that the crime and conviction actually occurred in Hillsborough

County. There is no "Hills County" in New Hampshire. Appellant contends this constituted a fatal variance between the charging information and the proof because the State was bound to prove the prior conviction pleaded in the information and not some other conviction. The prosecution argued that "Hills" was probably meant to be an abbreviation of Hillsborough and, though probably not correct in form, did not have the effect of insufficiently appraising the defendant of the crime of which he was allegedly convicted.

When the State offered, for purposes of identification, exhibit number one, a group of certified documents showing the conviction of Bernard G. Page of arson in Hillsborough County, New Hampshire, appellant objected on the ground that it was irrelevant. He argued that the documents showed a conviction from Hillsborough County, while the information charged him with having been convicted in "Hills County." This objection was overruled and State's exhibit number one was admitted into evidence by the court.

 Although it is not considered good form to use abbreviations in written instruments, it is, nevertheless, accepted practice in our language, so long as the actual meaning and identification of the abbreviation is apparent. As early as 1834, this Court found in *Kearns v. State*, (1834) 3 Blackf. 334, that a summons commanding the defendant to appear "[o]n the first day of their next Octb. term," presented no error. "This objection is too slight. The abbreviated word could not be mistaken." *Id.* at 337. Further, in *Hedderich v. State*, (1885) 101 Ind. 564, 1 N.E. 47, the Court took judicial knowledge that the expression in a statute, "between eleven [o'clock] p. m. and five o'clock a. m.," meant between eleven o'clock night and five o'clock morning of the succeeding day. In *State v. Whiteneck*, (1911) 176 Ind. 404, 409, 96 N.E. 156, 158, this Court held that a signature of "Jos. H. Rees" was intended to be the signature of Joseph H. Rees. We do not feel the trial court abused its discretion by recognizing that "Hills County" was an abbreviation for

Hillsborough County, and by taking judicial notice of the fact that there is no "Hills County" in New Hampshire. Facts of geography can be taken as true through judicial notice by a court without actual direct evidence on the subject. *Moore v. State*, (1926) 198 Ind. 547, 554, 153 N.E. 402, 404; *Hays v. State*, (1857) 8 Ind. 425, 426. We do not believe there was a fatal variance between pleading and proof.

 Appellant himself also testified that, in fact, he was convicted of arson and burglary in New Hampshire, and that he had served some period of time for each of the convictions. The evidence of the conviction in Hillsborough County as to the manner in which he was sentenced, the term of years for which he was sentenced, and the amount of time actually served by him, were corroborated in other ways, including by appellant's own testimony. Therefore, we find no error in the court's admission of this exhibit. We also believe there was substantial evidence from which the jury could have found beyond a reasonable doubt that appellant Page was a habitual offender.

## II.

 Sergeant Barbara Webb of the Bloomington Police Department testified as a fingerprint expert. She identified appellant as the same Bernard G. Page named in the prison records of the State of New Hampshire on the basis of a comparison of appellant's fingerprints with those found in the prison records. Her testimony was admitted by the trial court over defendant's objection that her qualifications as an expert were insufficient.

Webb testified that she had attended two one-week courses sponsored by the F.B.I. She stated that the first course consisted of basic fingerprints, while the second course was more advanced. About one day of the second course consisted of comparing known fingerprints with unknown prints. Since taking the courses she had been in charge of fingerprints for the Bloomington City Police for two years and had dealt with hundreds of fingerprints. She also

testified that although she had been doing fingerprint comparisons for two years, she had never testified in a trial. She had, however, testified at non-adversarial, probable cause-type hearings on four or five occasions.

In *Reid v. State*, (1978) Ind., 372 N.E.2d 1149, the same question regarding the qualifications of a testifying expert was raised. Upholding the trial court's decision to permit the testimony, we pointed out that there can be no hard and fast rule as to the quantum of knowledge required to qualify as an expert in a given field. "The extent of the witness' knowledge, however, affects the weight of [her] testimony, which is a matter for the jury to determine." *Id.* at 1152. We have also held that whether a witness has sufficient qualifications to be recognized as an expert rests within the sound discretion of the trial judge. His decision will be reversed only for an abuse of that discretion. *Reid, supra; Guyton v. State,* (1973) 157 Ind.App. 59, 63, 299 N.E.2d 233, 235; *State v. Vaughan,* (1962) 243 Ind. 221, 228, 184 N.E.2d 143, 146–47. The trial court did not abuse its discretion in permitting Sergeant Webb to testify as an expert. Further, we agree with the State's contention that the admission of Sergeant Webb's testimony could not have harmed appellant, for, as we noted earlier, appellant took the witness stand and admitted that he was convicted of arson and burglary in New Hampshire and had served time in prison for each conviction.

### III.

The trial court ordered the separation of witnesses during the taking of testimony. After Mary Bradley had testified under both direct and cross-examination, but while she was still on the witness stand, defense counsel moved to strike all of her testimony, alleging that he had seen her looking into the courtroom from the hallway during the trial before she took the stand, in violation of the court's separation order. Counsel was not able to state whether this was before or after the separation order was entered, nor did he contend that Mrs. Bradley heard the testimony of any other witnesses. His allegation was that she and two other witnesses compared notes before they were called to testify. Mrs. Bradley acknowledged that at one point she was standing in the doorway looking into the courtroom with witnesses Pawlowski and Evans. However, she said the only comment she recalls any of them making was that the defendant appeared different, with reference to his beard and the length of his hair, compared to his appearance at the time of the robbery.

▪ The court overruled defendant's objection and motion to strike, stating that he could find no evidence of corroboration or counseling among the witnesses to such an extent that he would have to strike her testimony. A violation of an order separating witnesses does not automatically entitle a defendant to a mistrial or mandate a trial judge to refuse or strike the testimony. In the absence of any procurement or connivance by the party using the witness who has violated the order, it is well established that it is within the discretion of the court to permit the witness to testify. *Brannum v. State,* (1977) Ind., 366 N.E.2d 1180, 1183; *Buchanan v. State,* (1975) 263 Ind. 360, 367–68, 332 N.E.2d 213, 219. There was no evidence here that the State had colluded with the witness to violate the court order, or that the witnesses themselves had intentionally done so. The court therefore acted within its discretion in permitting the testimony to stand, particularly since defense counsel did not raise the question until after the witness had testified, when he was well aware at the time she took the stand that this issue was at hand.

### IV.

▪ Appellant next claims the trial court erred in sentencing him for both robbery and the habitual offender convictions. He was sentenced under Ind.Code (Burns 1979 Repl.) § 35–50–2–8(a), which reads: "A person who is found to be an habitual offender shall be imprisoned for an additional fixed term of thirty years to be added to the fixed term of imprisonment imposed under

section 3, 4, 5, 6, or 7 [35–50–2–3—35–50–2–7] of this chapter." Appellant did not object to the validity of this new statutory provision at the time of sentencing, nor did he raise this question in his motion to correct errors. He cites *Eldridge v. State*, (1977) Ind., 361 N.E.2d 155, and *Jones v. State*, (1977) Ind., 369 N.E.2d 418, both of which held that the penalty for being an habitual criminal was not an additional sentence, but an alternative sentence for the crime which made him an habitual offender. Both of those cases were, of course, decided under the statute in effect prior to October 1, 1977. *See* Ind.Code (Burns 1975) § 35–8–8–2. The legislature was within its province in changing the manner of sentencing in the above statute, and the trial court properly sentenced the defendant under the amended legislation.

Finding no error, we affirm the judgment of the trial court.

All Justices concur.