MCADAMS *v.* STATE.

[No. 28,430. Filed October 22, 1948.]

*P. S. Seacat* and *Clyde R. Lottick,* both of Corydon, attorneys for appellant.

*Cleon H. Foust,* Attorney General, *Frank C. Coughlin,* First Deputy Attorney General, *Merl M. Wall,*

deputy Attorney General, all of Indianapolis, and *Robert W. Davis,* Prosecuting Attorney, (of counsel) of Corydon, attorneys for appellee.

YOUNG, C. J.—Appellant was charged by affidavit with unlawfully, feloniously, and burglariously breaking and entering the dwelling house of Georgia Franz with the intent, unlawfully, to take and carry away the goods, chattels and personal property of said Georgia Franz. It will be observed that the charge substantially follows the language of the first degree burglary statute. § 10-701 (a), Burns' 1942 Replacement. The jury found defendant guilty of burglary in the second degree, but no question is raised as to the propriety of such a verdict on such an affidavit. Defendant was sentenced to imprisonment for from two to five years, as prescribed by the second degree burglary statute. § 10-701 (b), Burns' 1942 Replacement.

By motion to quash and motion in arrest of judgment defendant attacked the affidavit for failure to allege that the breaking and entering was in the night time. It is his position that by common law it is necessary that burglary be committed in the night time, and that the legislature, by failing to prescribe otherwise, in effect retained the common law requirement that the offense be committed at night. With this we cannot agree. It is true that when a public offense has been declared by statute in the generic terms of the common law without more particular definition, courts will resort to the common law for the particular acts constituting the offense, *Glover* v. *State* (1912), 179 Ind. 459, 101 N. E. 629; *Ledgerwood* v. *State* (1892), 134 Ind. 81, 89, 33 N. E. 631. It is also accepted in Indiana that when a crime is not specifically and well defined the courts may refer to the common law for a definition and the common

law definition will be adopted. *Simpson* v. *State* (1925), 197 Ind. 77, 78, 149 N. E. 53; *State* v. *Patton* (1902), 159 Ind. 248, 64 N. E. 850. We must bear in mind, however, that Indiana provided by statute almost 100 years ago that, "Crimes and misdemeanors shall be defined and punishment therefor fixed by statutes of this state and not otherwise," § 9-2401, Burns' 1942 Replacement, and therefore in Indiana there is no common law burglary. *Sweet* v. *State* (1941), 218 Ind. 182, 193, 31 N. E. 2d 993. The statute, pursuant to which this affidavit was prepared, defines first degree burglary as the breaking and entering of any dwelling house or other place of human habitation with intent to commit a felony therein. Acts of 1941, ch. 148, § 4, p. 447; § 10-701(a), Burns' 1942 Replacement. The rules for which appellant contends are therefore not controlling because burglary in the first degree has not been made an offense in generic terms only, but the crime has been specifically and well defined and resort to the common law is not necessary to determine the acts required to constitute the offense.

Appellant cites the case of *State* v. *Dailey* (1922), 191 Ind. 678, 134 N. E. 481, and we have not failed to take careful note of same. In that case the appellee was charged with the crime of murder. The indictment showed upon its face that death occurred more than one year and one day after the infliction of the alleged mortal wound. The statute defines murder with some particularity but failed to include the requirement that death should occur within a year and a day after the occurrence which is alleged to have caused death, and this court held that the common law rule of a year and a day should govern and that, even though not specified in the statute, the showing in the affidavit that more than a year and a day

had elapsed after the infliction of the alleged mortal wound made the indictment bad. Appellant says that this court held in that case that the legislature, by silence, adopted the common law rule of a year and a day, and that, by analogy, it must be said that in the statute before us the legislature, by silence, adopted the rule that burglary of a dwelling house must be committed in the night time. In a murder case the lapse of time between the overt act charged and the resulting death involves the element of causal connection and the real question is one of evidence. That is not true in the case before us. Here, if we accept appellant's theory, the time when the offense is committed goes to the substance of the offense. We are not willing to extend the rule laid down in the Dailey case further, and we hold that the burglary statute here involved defines the crime, not in generic or general terms, but definitely and particularly, and it is not necessary or proper to look to the common law for additional elements necessary to constitute the crime which the legislature has, we may presume, deliberately omitted.

In the course of the trial it developed that a search or searches of appellant's home had been made and a certain broken, brown jar was discovered by one such search and offered in evidence. Objection was made to the same because the search was made without a search warrant. There is evidence which indicates that officers went to appellant's home on at least two occasions. On one of these occasions his wife accompanied them and he was not present. His wife entered the house and handed out certain articles to the officers who did not enter the house at all. There was no evidence that the articles obtained upon this occasion were offered in evidence or had anything

to do with appellant's trial or conviction. For these reasons we are unable to hold that there was a search, illegal or otherwise, or, if there was, the appellant was prejudiced in any way.

Upon a second occasion officers went to appellant's house and entered and obtained the broken, brown jar which was offered in evidence in this case. The officers did not have a search warrant, but before they went to the house they talked to appellant and he told them to go ahead and search; that they would not find anything. Appellant admitted that no violence was used or threats made and that he made no protest. There may be a legal search without a warrant. A man may waive his constitutional right against search and seizure by consenting thereto, and if he does so knowingly and freely and without coercion he cannot object to the use of evidence obtained upon such search. *Shuck* v. *State* (1944), 223 Ind. 155, 167, 59 N. E. 2d 124; *Dearing* v. *State, ante* p. 273, 79 N. E. 2d 535, 536; 22 C. J. S., Criminal Law, § 657, p. 1005. According to the uncontradicted evidence, appellant consented to the search and there was no evidence that he was not acting knowingly and voluntarily and without coercion. We hold, therefore, that this search was not illegal and that, if otherwise competent, the broken, brown jar obtained upon this search and offered in evidence was properly admitted for what it was worth in an evidentiary way, which we will discuss later.

Appellant filed a motion for a new trial in which he alleged that there was insufficient evidence to sustain the verdict. This, we think, was true. As constituting some evidence of guilt the State points to written statements of appellant's wife and his son. Each of them was placed upon the wit-

ness stand by the State. Apparently the State hoped to prove by these witnesses facts tending to establish appellant's guilt and admissions of the appellant, but each of the witnesses denied the facts the State sought to elicit and denied that appellant had made the admissions sought to be proved. Thereupon signed statements by each of the witnesses were produced by the State, in which statements the witnesses recited facts and said that appellant had admitted facts which tended strongly to establish his guilt. Over objections these statements were admitted in evidence, but at the time the court stated that they were admitted for the sole purpose of impeachment and instructed the jury to that effect and that they should be considered by the jury for no other purpose. The court was right about this. The statements were pure hearsay and, admitted over objection, did not constitute proof of the facts alleged therein.

There was no direct evidence that appellant was guilty of the burglary charged. To sustain the verdict the State must rely upon just two circumstances. One was that the brown half-gallon jar belonging to Mrs. Franz above referred to was found in the house occupied by appellant. The other was that defendant fled and was arrested in a nearby county. We must determine whether these circumstances were sufficient to sustain the verdict.

It is true that unexplained, exclusive possession of stolen property soon after it was stolen ordinarily constitutes a circumstance from which the trier of the facts may draw an inference of guilt. 52 C. J. S., Larceny, § 108, p. 929, *Biggs* v. *State* (1929), 201 Ind. 200, 205, 206, 167 N. E. 129; *Dedrick* v. *State* (1926), 210 Ind. 259, 269, 270, 274, 2 N. E. 2d 409; *Mason* v. *State* (1908), 171 Ind. 78, 81, 85

N. E. 776; *Evans* v. *State* (1946), 224 Ind. 428, 432, 68 N. E. 2d 546; but it is merely a circumstance for the jury to consider along with all the other facts and circumstances of the case.

When the evidence before the jury is entirely circumstantial, as in the case before us, certain rules have been established for the jury's guidance. It is not enough that the circumstances be consistent with the hypothesis of guilt. They must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence. *Heacock* v. *State* (1930), 202 Ind. 344, 353, and cases cited, 174 N. E. 283; *Scharillo* v. *State* (1934), 207 Ind. 22, 24, 191 N. E. 76; *Osbon* v. *State* (1937), 213 Ind. 413, 424, 13 N. E. 2d 223; *Falk* v. *State* (1914), 182 Ind. 317, 106 N. E. 354; *Robinson* v. *State* (1919), 188 Ind. 467, 124 N. E. 489; *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N. E. 235; *Osborn* v. *State* (1926), 199 Ind. 44, 46, 154 N. E. 865. It must be such that the trier of the facts may reasonably and naturally infer to a moral certainty the existence of the fact sought to be proved. *Howard* v. *State* (1923), 193 Ind. 599, 602, 141 N. E. 341.

It is true that the above rules are for the guidance of trial courts and juries, *Heacock* v. *State, supra,* at p. 353; *Scharillo* v. *State, supra,* at p. 24, and it is for them to weigh the evidence and determine the guilt of the accused. But there is always the question for the reviewing court of whether or not there was evidence of circumstances from which the jury under the above rules reasonably might have drawn an inference of guilt. *Howard* v. *State, supra,* at p. 602; *Scharillo* v. *State, supra,* at p. 24.

In *Wood* v. *State* (1934), 207 Ind. 235, 239, 192 N. E. 257, the following language is quoted from *Hiner* v. *State* (1925), 196 Ind. 594, 598, 149 N. E. 168:

". . . In the consideration of cases which rest partially or wholly upon circumstantial evidence, each case must be acted upon wholly by itself, and the result is to be determined from the circumstances peculiar to it. But all the circumstances as proved must be consistent with each other, and, taken together, they must point surely and unerringly in the direction of guilt. In the case at bar, the evidence falls far short of this rule and the court is of the opinion that the evidence, at best, but supports a guess or a supposition that appellant was connected in any manner with the still and distilling apparatus. The conclusion follows that the finding of the trial court is not supported by sufficient evidence."

Eliminating the impeaching statements of appellant's wife and son, as we think they should be, the sum total of the evidence upon which the State relies may be summarized as follows: The cellar of Mrs. Franz' house was broken into and certain canned fruits and vegetables were carried away. The jar in question was submitted to Mrs. Franz upon the witness stand and she was asked, "Is that your jar?" and she made the following answer: "Yes, I think so. In fact I am almost sure it is." This was the only testimony identifying the jar taken from appellant's house as being a jar which had been stolen from Mrs. Franz' home. This evidence, upon its face, indicates a doubt upon the part of even Mrs. Franz herself as to whether or not it belonged to her, but it constituted evidence tending to identify the jar as coming from the house which was burglarized and we will not weigh it. That was for the jury. However, Mrs. Franz did not

testify that this jar, or even such a jar, was a part of the loot taken when her house was broken into. The jar was not found in appellant's house until at least three and a half months after the burglary, and appellant's house was occupied not only by him but also by his wife and a 17 year old son, both of whom, it appears from the record, were at one time under arrest, charged with complicity in this burglary. It has been held that the mere finding of stolen goods in the house of a man having a wife and daughter discloses in him only a constructive possession, and not an exclusive possession, which will raise a presumption of guilt. *State* v. *Drew* (1904), 179 Mo. 315, 78 S. W. 594.

We are utterly unable to convince ourselves that the jury reasonably could have drawn from these circumstances an inference that the accused committed the burglary with which he was charged. As was stated in *Wood* v. *State, supra,* at p. 239, this circumstantial evidence supports no more than a guess or suspicion that the appellant was guilty.

There remains the fact that the accused fled and was arrested in a nearby county. The evidence was uncontradicted that before fleeing he had had a fight with a constable and had knocked him down and struck him after he was down. Appellant testified that he left his home because he expected trouble on account of this fight. In the light of these circumstances we do not think the fact that he fled was any evidence of his guilt on the charge of burglary.

There are other questions raised by appellant, with reference to certain questions and answers, which may not occur upon another trial and we need not consider them.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 81 N. E. 2d 671.