## TAIT *v.* STATE OF INDIANA.

[No. 30,164. Filed March 13, 1963. Rehearing
denied May 29, 1963.]

*William C. Erbecker,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

MYERS, J.—Appellant was charged by amended affidavit with Burglary of Safe and Burglary in the Second Degree. He was tried by a jury and found guilty of the crime of Entering to Commit a Felony and was sentenced from one to ten years in the Indiana State Prison, pursuant to the provisions of §10-704, Burns' Ind. Stat., 1956 Replacement.

The assignment of errors states as the only ground for reversal the overruling of appellant's motion for new trial. This motion contains twenty-nine specifications of error. In the Argument section of his brief, appellant has divided his argument into eighteen propositions embracing these specifications. The first is that the verdict of the jury is not sustained by sufficient evidence. In determining this, we consider only that evidence most favorable to the State, together with all reasonable and logical inferences that may be drawn therefrom. *Music* v. *State* (1959), 240 Ind. 54, 161 N. E. 2d 615; *Myles* v. *State* (1955), 234 Ind. 129, 124 N. E. 2d 205.

The record reveals that on December 21, 1958, a Coca-Cola plant was located upon the east side of Indiana Highway No. 43, just north of the City of Crawfordsville. The building was about one hundred yards off the highway and faced west. There was a signal alarm system in the headquarters of the Crawfordsville Police Department which was directly connected with the plant. It operated in such a fashion that any noise made in the plant could be heard at Police Headquarters.

About 3:16 a. m. on December 21, 1958, a police lieutenant on duty at headquarters heard a noise over this signal system, which he said sounded like a drill being operated inside the office of the Coca-Cola plant. He testified:

> "It was a whining whirring sound such as a motor on a drill would make. It stopped and started and that went on several times."

Police officers were immediately dispatched to the plant. Altogether there were seven policemen who arrived at the plant grounds, including two state troopers. It took them between eight and ten minutes to get there. They parked their squad cars in different positions, with headlights on so as to shine against the building. Then they surrounded it on foot. They discovered in the rear of the building, on the east side, a wooden overhead folding door which had been pried open and was raised from the floor about twenty-four inches.

The buzzing and drilling sound continued for a minute or two after the police arrived. When the building had been surrounded, officers yelled for any one inside to come out. There was a sound within the building as of breaking bottles. Then a screen dropped out of a window on the north side, which was eight or ten feet from the ground. Appellant was seen to come through the window, feet first, and drop to the ground. He started to run to the front of the building and tried to hide behind some bushes, but finally surrendered to one of the state troopers who appeared immediately in front of him with a shotgun. He was searched, handcuffed and held outside until other officers searched the premises to see if any one else was there. They found a case of broken, empty

bottles inside, but no other person in the building. Appellant was then taken inside, due to the cold, as he was wearing no coat. As he came out the window, he was seen wearing a type of stocking cap which fell off after he jumped to the ground. This was picked up by the police. When apprehended, he told the officer his name, and that he thought he had been in a church.

Investigation of the office inside the building revealed a large 700-pound safe, with the outside doors ripped and punched open. Within the safe there was a keyster, or second safe, which had not been opened. An electric drill was sticking out of the keyster, and there was evidence that the drill had been used in several other places. A pry bar was lying in front of the safe and nearby was a bag which contained a flashlight, a screw driver, Allen wrenches, a half-inch drill, a pair of pliers, and three other drills. An excessive amount of water was on the floor. A broken vial was attached to the rear of the safe door. There was testimony that such a vial could contain tear gas which would break in the event the safe was punched and that water could be sprayed to minimize the effects of this tear gas. The manager of the plant, who arrived on the scene shortly afterward, stated there was a blue haze in the office which was apparently caused by tear gas.

Upon examination of the safe, the manager discovered that the records kept in the inner part were gone. He said these consisted of truck titles, canceled checks and notes, some stamps, a railroad ticket, some loose change and about $150 in cash received from vending machines. Debris and waste paper were scattered about the floor and a wastebasket was missing. None

of these articles were found on the premises or on the person of appellant.

A further examination revealed that the overhead door had been jimmied open, but the marks on the casing did not match those made by the pry bar found at the scene. An inside door to the office also showed evidence of being forced open by a jimmy. There was a back office in the northeast corner where there was a sliding window which was open. A window screen had been forced out of it and it appeared to have been opened from the inside. A navy peacoat was also found in the building.

At the time, appellant was wearing only a shirt, pants and shoes. There was testimony by the police that it would have taken at least an hour before they arrived to have put the safe in the condition in which it was found. One officer stated that, in his opinion, it would have been physically impossible for one man to have committed this burglary, and that the stolen articles were removed by an accomplice. Others testified that talking was heard inside the building just after they arrived, and that an automobile was observed to have driven up and stopped in front of the plant, and then to have taken off at high speed, headed north on Highway No. 231, where it turned left at an intersection and disappeared within a few minutes after their arrival. The cap and jacket were taken to the State Police Laboratory for testing. After appellant had remained in jail for twenty-four hours, his pants were likewise sent to the laboratory. A report came back that minute particles of fire clay, similar to that coming from the safe, were found on the cap and peacoat.

Appellant took the witness stand in his own defense. In substance, he testified that in December, 1958, he

lived in Indianapolis, where he owned and operated a Carburetor Service Shop. On December 20, 1958, he closed his shop around 6:00 p. m., went home, cleaned up and changed his clothes. He spent some time in a tavern, and then, around 10:00 p. m., he went to the apartment of a man named John Martin Young. Young was not there, but another man whom he knew, named Mitchell Stotts, was there and they drank and talked for a while. Around 11:15 p. m., Young, accompanied by two men he did not know, came into the apartment. One of the men was carrying a wastebasket, which he dumped on the floor. It contained papers and assorted office materials. They had approximately $250 cash, which they proceeded to divide among themselves. Their conversation was about a burglary in Crawfordsville, how they had run into tear gas, and how they thought they should have gotten more money. Then they left the apartment. Appellant departed about 11:30 p. m., after talking with Young a few minutes.

He continued his testimony by saying that he then visited a tavern, where he ran into an old friend and they had a conversation. At 12:25 a. m., December 21st, he proceeded to the house of his girl friend. He found her asleep, so left her a note, together with a bottle of vermouth. He then went to his home and sought something to eat. There was nothing in the icebox that he wanted so he changed into his working clothes, got into his car and drove to an eating place called the Chicken Shack, arriving there about 1:30 a. m. He remained there about half an hour. Just as he started to leave, Young drove up, blew his horn and asked appellant to accompany him on a ride to Crawfordsville, so appellant parked his car and joined Young in his automobile. Young stated that he had left an electric drill at the Coca-Cola plant and he

wanted to retrieve it. They drove to Crawfordsville and stopped near the plant about 3:00 a. m. Young went inside the plant. Appellant waited fifteen or twenty minutes, and when Young did not come out, he got out of the automobile and proceeded to go through a partly-opened door into the plant. It was then that the police arrived.

Appellant categorically denied that he had anything to do with the burglary or the opening of the safe. He also denied that the cap or peacoat belonged to him. He did admit having been arrested and convicted of several felonies, among them second-degree burglary, for which he had served time in prison.

Stotts appeared as a witness for appellant, but did not corroborate appellant's story. He claimed that appellant came to Stotts' apartment on the night of December 20, 1958, around 10:30 or 11:00 o'clock, and had a few drinks while they talked. Some men came to the door and talked to appellant, but Stotts did not hear their conversation. He said he did not know that Young was one of the men, and flatly denied that a wastebasket was brought into the room and dumped on the floor. He said appellant told him that the men wanted him to go somewhere with them. Appellant then said he would see Stotts later and departed.

Appellant strenuously argues that the State failed to prove he entered the Coca-Cola plant with the intent to commit a felony therein. He claims the evidence reveals no fingerprints of his were found on the premises and no footprints were observed around the safe; that an examination of his pants showed no debris from the safe or the interior of the building; that the State's witnesses testified that there had to be more than one man to crack the safe; that it must have taken several hours before appellant was captured to

put the safe in the condition in which it was found; that the papers, documents and money taken were not on appellant's person, and a wastebasket was missing. He argues that all these facts, together with appellant's explanation of what happened on the night of December 20, 1958, can only lead to the conclusion that the felony had already been committed prior to the time of appellant's entry into the building, so that at most appellant was guilty of trespass.

It has been held by this court that the issue of intent is a question of fact to be determined by the jury from all the evidence submitted at the trial. Its verdict will not be disturbed on appeal unless there is an entire failure of the evidence to sustain it on some material point. *Bleiweiss* v. *State* (1919), 188 Ind. 184, 119 N. E. 375, 122 N. E. 577. Intent may be inferred from circumstances which legitimately permit it. *Luther* v. *State* (1912), 177 Ind. 619, 625, 98 N. E. 640. As has been said in *Dennison* v. *State* (1952), 230 Ind. 353, 356, 357, 103 N. E. 2d 443, 444:

> "Where the evidence, either direct or circumstantial, is such that two inferences may reasonably be drawn therefrom, one of guilt and one of innocence, it is not within the province of this court to determine which inference should have controlled, that being exclusively for the trial court. *Schlegel* v. *State* (1950), 228 Ind. 205, 91 N. E. 2d 167; *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445." See *Shutt* v. *State* (1954), 233 Ind. 169, 117 N. E. 2d 892.

There was sufficient direct and circumstantial evidence in the case at bar from which the jury could have inferred that (1) appellant participated in the burglary and that an accomplice escaped with the proceeds before appellant was taken into custody; (2)

appellant had broken in at an earlier time and then later returned to complete the job on the inner safe; (3) appellant was present and aided and abetted in the commission of the offense, or counseled, encouraged or otherwise procured the offense. The jury was not bound to believe appellant's testimony concerning the events of the night of December 20, 1958. *Hammond* v. *State* (1918), 187 Ind. 267, 272, 119 N. E. 5; *Bange* v. *State* (1958), 237 Ind. 422, 432, 146 N. E. 2d 811.

In our opinion, there was substantial evidence of probative value, together with reasonable inferences to be drawn therefrom, wherein the jury could have found that appellant was guilty of the crime of which he was convicted.

In Proposition 2 appellant claims that the verdict of the jury was contrary to law. Again he states that all the evidence is totally inadequate to sustain a guilty verdict of intent to commit a felony. This court has held as follows:

> "It is only when the evidence is without conflict and leads to but one reasonable conclusion, and the verdict of the jury reached a contrary conclusion, that the verdict will be disturbed as being contrary to law. *Souerdike* v. *State* (1952), 231 Ind. 204, 108 N. E. 2d 136." *Bowens* v. *State* (1953), 231 Ind. 559, 563, 109 N. E. 2d 91, 93.

The evidence most favorable to the State, as previously set forth in this opinion, will not permit a reversal under the above-stated rule.

In Proposition 3 appellant contends that the court abused its discretion in overruling appellant's verified motion for continuance. This motion was based upon statements that appellant needed the testimony

of John Martin Young, who was discovered to be incarcerated as a federal prisoner in the Dade County Jail at Miami, Florida. The substance as to what Young would testify was set forth, it being that Young had entered the Coca-Cola plant around 8:00 p. m. on December 20, 1958, with unknown accomplices, had returned with appellant around 3:15 a. m. on December 21st to retrieve his power drill, and that appellant did not participate in the burglary. Time was asked within which to obtain Young's deposition. The motion was signed by appellant on April 7, 1961, and filed with the court on April 8, 1961. This was two days before the date set for trial, which was April 10th.

In the Argument section of his brief on this proposition, appellant relies on the pertinent statute which makes it the legal duty of the court to grant a continuance as a matter of right upon the filing of a proper affidavit. Section 9-1401, Burns' Ind. Stat., 1956 Replacement. He has not set out verbatim the statute or any relevant part thereof as is required by Rule 2-17 (e) of this court. Therefore, the error assigned, not being treated as therein directed, shall be deemed as waived. Rule 2-17 (f). However, the statute requires that the affidavit must be filed with due diligence on the part of the defendant. It must be filed at least five days before the date set for trial, or the defendant must sustain the burden of establishing to the satisfaction of the court that he was not at fault for failing to file the affidavit at an earlier date. Here, as we have seen, the affidavit was filed two days before the date set for trial. Appellant pleaded not guilty to the original affidavit on October 15, 1959. An amended affidavit was filed on October 1, 1960, to which appellant pleaded

not guilty on November 30, 1960. The trial date of April 10, 1961, was set by the court on February 3, 1961. Appellant did nothing to locate Young until April 5, 1961, when he alleged he told his attorney that Young was in jail. In his verified motion he stated that he "made due diligence to obtain said evidence at the earliest possible time after learning of the incarceration of said witness . . . ."

> "The specific facts constituting diligence on the part of the defendant and his attorney must be fully set out. If anything is left to inference and conjecture the inferences indulged will be against the party who could have shown the real facts and failed to do so. The time when the absence of the witness was first discovered, together with the steps taken to discover his whereabouts, when any information was obtained and what use was made of it, the time when defendant or his counsel learned where the witness was, the fact that a subpoena was issued for defendant, and when it was issued or why it was not issued, or any facts constituting an excuse for failing to produce the witness or to take his deposition. A mere statement of the applicant's own conclusions as to the diligence used and his inability to find the witness is not sufficient; and the statements showing diligence and tending to excuse defendant for whatever he failed to do toward finding an absent witness, must exclude all reasonable inferences of a lack of diligence." *Ewbank's Indiana Criminal Law,* Symmes Ed., Vol. 1, Ch. 15, §289, pp. 167, 168, and cases cited therein.

It is manifest that the affidavit is deficient upon the question of diligence, and therefore the court committed no error in overruling the motion.

The appellant next says, in Proposition 4, that there was error in the court's refusal to receive in evidence appellant's tender of "stipulated facts" pertaining to the absent evidence, the subject-matter of the verified motion for continuance. He pre-

sents no argument or authority to support this contention, but refers back to the preceding proposition which he adopts by reference. The tender recites the same facts which were set forth in the verified motion. Furthermore, there was no stipulation, as it was not signed by the Prosecutor. For the reasons heretofore given, it was not error on the part of the court to refuse this tender.

Propostion 5 alleges the court committed error in overruling the motion for directed verdict at the conclusion of the State's case. The record shows that after the ruling on the motion, appellant proceeded to introduce evidence on his own behalf. If there was any error it was waived by this action on the part of appellant. *Swift v. State* (1961), 242 Ind. 87, 176 N. E. 2d 117.

Proposition 6 claims error in that the court refused to give appellant's tendered instruction No. 2. The tendered instruction is set forth in full, but no authorities, statutes or reasons are cited in support of his claim other than a statement that the facts show that appellant had no intention to commit a felony. Accordingly, this court will not consider Proposition 6, pursuant to Rule 2-17 (e) and (f), *supra*.

In Proposition 7 appellant says the court erred in refusing his tendered instruction No. 6 which is based on a statement of law as to a lesser included offense in Count 2 of the amended affidavit not covered by any other instruction. The instruction tendered recites the words of the statute on third-degree burglary which is a misdemeanor. Section 10-701 (c), Burns' Ind. Stat., 1956 Replacement.

Propositions 8, 9, 12 and 13 refer to the same charge of error in that the court's instructions did not include

a possible verdict as to burglary in the third-degree. It has been held by this court that third-degree burglary is not a lesser included offense under the charge of entering to commit a felony. *Goldstine* v. *State* (1952), 230 Ind. 343, 103 N. E. 2d 438. See *Watford* v. *State* (1957), 237 Ind. 10, 143 N. E. 2d 405. Thus the court committed no error in refusing appellant's instruction No. 2 and in giving its instructions without referring to third-degree burglary as an included offense.

In Proposition 10 appellant complains of the last sentence in the court's instruction No. 21. The instruction reads as follows:

"The court instructs the jury that what is meant by circumstantial evidence in criminal cases is the proof of such facts and circumstances connected with, or surrounding, the commission of the crime charged as tend to show the guilt or innocence of the party charged, and if these facts and circumstances are sufficient to satisfy the jury of the guilt of the defendant, beyond a reasonable doubt, then such evidence is sufficient to authorize the jury to find the defendant guilty. *The law exacts the conviction whenever there is legal evidence to show defendant's guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence.*" (Our emphasis.)

He says that the last sentence "might tend" to implant in the mind of the jurors that it was obligatory to return a guilty verdict under the evidence as presented. This instruction merely attempts to say that the jury may consider circumstantial evidence in determining a defendant's innocence or guilt, and a conviction may be warranted if there is a sufficiency of such evidence showing guilt beyond a reasonable doubt. There were other instructions covering the subject of reasonable doubt given by the

court without objection and which covered the subject thoroughly. It is not shown that appellant was substantially prejudiced by this last sentence. Appellant himself doubtfully says it "might" have tended to make the jury think it was necessary to bring in a verdict of guilty. Even if this were an inaccurate statement, the judgment will not be reversed therefor. *Moore* v. *State* (1926), 198 Ind. 547, 153 N. E. 402, 154 N. E. 388. As was said in *Anderson* v. *State* (1933), 205 Ind. 607, 622, 186 N. E. 316, 322:

> "Instructions are to be considered with reference to each other, and as an entirety, and error in a particular instruction will not justify a reversal unless it is of such a nature that the whole charge of which it forms a part is thereby vitiated so as to mislead the jury as to the law of the case. . . ."

In Proposition 11 appellant alleges error in the giving of the court's instruction No. 23, the last sentence in the first rhetorical paragraph of which reads as follows:

> "An unanswered question is of no value [for] any purpose and must be disregarded by you."

No other part of the instruction is set out in the brief, so we have no means of knowing to what it refers. Our Rule 2-17 (d), in part, states as follows:

> "When error is predicated on the giving or refusal of instructions, the statement of the record must contain, in addition to the instructions given or refused which are complained of, all the instructions given or tendered which have a bearing upon the questions raised."

> Thus, we cannot consider the question of whether the court committed reversible error in giving this instruction. Rule 2-17 (f), *supra*.

Proposition 14 is that the verdict of the jury is not sustained by sufficient evidence and therefore contrary to law because the evidence presented by appellant's witnesses conclusively shows the Coca-Cola plant was burglarized some time prior to entry by appellant. This question is not argued in this part of the brief, but refers back to Propositions numbered 1 and 2, which have been disposed of previously in this opinion.

In Proposition 15 appellant charges error wherein the court sustained an objection to a question propounded by appellant to one of the State's witnesses on cross-examination, as follows:

"Q. If the testimony would show that the safe was burglarized five or six hours previous to your arrival there, would you say that the physical evidence of that safe and the condition surrounding it, namely, the absence of strong fumes, would prove that the burglary happened five or six hours before you arrived there?

"Objection by Mr. Groves, the Prosecutor:

"Objection. He is invading the province of the jury.

"Ruling by the Court:

"Objection sustained.

"Offer to prove made by Mr. Erbecker out of the hearing of the jury:

"I offer to prove that if this witness were permitted to answer this question that the witness would testify that in substance the presence of the tools and the absence of gas odor and the surrounding facts and circumstances as discovered by the witness at the time of the arrest of the defendant would show that the burglary could have been committed five or six hours prior to the arrival of the witness on the scene and prior to the arrest of the defendant." Appellant's Brief, pp. 148, 149.

Appellant argues that the testimony sought to be elicited was relevant and material to the issue as to

whether the crime had been committed prior to appellant's arrival at the building. The offer to prove called for a conclusion on the part of the witness. Only the facts themselves may be stated, and not the conslusion on the part of the person making the offer to prove. *Ross* v. *State* (1907), 169 Ind. 388, 82 N. E. 781; *Malone* v. *State* (1911), 176 Ind. 338, 96 N. E. 1. The court committed no error in sustaining the objection to this question.

Error is claimed in Proposition 16 on the ground that a new trial should have been granted because of surprise perpetrated upon appellant at the trial which ordinary prudence could not have prevented. It is alleged that the testimony of appellant's witness, Mitchell Stotts, was totally different from statements and conversations he related to appellant and appellant's counsel prior to the trial. Section 9-1903 (Sixth), Burns' Ind. Stat., 1956 Replacement, is relied upon. It states that a new trial shall be granted for "accident or surprise which ordinary prudence could not have guarded against."

The record does not reveal that at any time during or after the testimony of Stotts appellant requested a continuance or a postponement. Thus, he did not save his point at the trial even if the surprise was material to his case. It has been stated in *Mosier* v. *State* (1942), 219 Ind. 669, 671, 40 N. E. 2d 698, 699:

> "The appellant has made no such showing as entitles him to a new trial for surprise or newly discovered evidence. One who claims surprise at the admission of testimony against him must ask for a postponement of the trial or a continuance so that he may be prepared to meet such testimony. He will not be allowed to speculate on obtaining a favorable verdict and, when it is found against him, claim the right to a new trial on the

ground of surprise. *Anderson* v. *State* (1928), 200 Ind. 143, 161 N. E. 625. A new trial will not be granted merely to procure evidence to contradict or impeach witnesses. *Gavalis* v. *State* (1922), 192 Ind. 42, 135 N. E. 147."

Furthermore, granting a new trial on this ground is within the sound discretion of the trial court. *Anderson* v. *State* (1928), 200 Ind. 143, 161 N. E. 625; ██ *Hansen* v. *State* (1952), 230 Ind. 635, 106 N. E. 2d 226. The court did not abuse its discretion and committed no error in refusing to grant a new trial because of surprise.

Appellant states in Proposition 17 that the verdict is not sustained by sufficient evidence and is contrary to law because the State failed to establish the ██ corporate existence of the place allegedly burglarized. No authorities are cited for this proposition, so we are not bound to consider it. Rule 2-17 (e) and (f), *supra.* However, it is to be noted that both counts of the affidavit charge appellant with breaking and entering a building owned by and of "Coca-Cola Bottling Company of Crawfordsville, Indiana." The manager of the plant testified that the building burglarized was an asset of a corporation, the correct name of which was "Coca Cola Bottling Company of Crawfordsville, Inc." As appellant did not challenge the ownership of the plant or question the corporate existence of the Coca-Cola Company at any time before or during the trial, the court committed no error in overruling this specification.

In Proposition 18, appellant's final reason for new trial is the overruling of this motion for directed verdict at the close of all the evidence. He once again argues that there was insufficient evidence upon which to base the jury's verdict that he intended to commit

a felony. As we have set forth previously in this opinion, the evidence most favorable to the State, and the inferences to be drawn therefrom, did not justify a directed verdict of not guilty.

In *State* v. *Patsel* (1960), 240 Ind. 240, 245, 163 N. E. 2d 602, 604, this court reiterated what was said in *State* v. *Torphy* (1940), 217 Ind. 383, 388 28 N. E. 2d 70, 72:

> " 'It is thoroughly settled by the decisions in this state that a peremptory instruction directing a verdict in favor of the accused in the trial of a criminal case can only be given where there is a total absence of evidence upon some essential issue, or where there is no conflict in the evidence and it is susceptible of but one inference, and that inference is in favor of the accused. Where a determination of the issue involves the weight of the evidence or the credibility of witnesses, it is an invasion of the province of the jury for the court to direct a verdict. *State* v. *Kubiak* (1936), 210 Ind. 479, 4 N. E. 2d 193.' "

Judgment affirmed.

Achor, Arterburn and Landis, JJ., concur; Jackson, C. J., concurs in result.

NOTE.—Reported in 188 N. E. 2d 537.