METZ *v.* STATE OF INDIANA.

[No. 30,293. Filed December 11, 1963.]

*Bob Good,* of Shelbyville and *Charles Z. Bond,* of Fort Wayne, for appellant.

*Edwin K. Steers,* Attorney General and *Frederick J. Graf,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant, William Metz, was charged by affidavit in four counts as follows:

Count I—Second degree burglary.

Count II—Burglary with tools.

Count III—Possession of burglary tools by convict.

Count IV—Auto banditry.

The appellant pleaded not guilty to each of the counts and after trial by court the appellant was found guilty of Counts I, II and IV and not guilty on Count III (possession of burglary tools by convict).

The State concedes error on appeal as to Count II (burglary with tools).

We thus have for consideration on appeal the charges of Count I (second degree burglary) and Count IV (auto banditry).

The appellant filed a motion for a new trial, which was overruled. The sole remaining alleged error for consideration is that the finding of the court is not sustained by sufficient evidence. Under this contention appellant urges that the defendant was not identified

and secondly, that there was a failure of proof of ownership of the property alleged to have been taken.

A consideration of these points requires a brief recital of the evidence.

On appeal, in determining the sufficiency of evidence, we may consider only the evidence most favorable to the sustaining of the trial court's finding below. In other words, in this case, the evidence most favorable to the State. *Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. 2d 537.

At the same time, we may not weigh conflicting evidence nor determine the credibility of witnesses. *Myers* v. *State* (1960), 240 Ind. 641, 168 N. E. 2d 220; *Denson* v. *State* (1960), 240 Ind. 324, 163 N. E. 2d 749.

On the issue of identification of the appellant, Oscar Baldwin, the manager of Leo C. Ward, Inc., d/b/a the Frances Shop where the alleged burglary took place, testified that he went to the shop on Sunday afternoon to do some work; that he heard some noise upstairs in the building, but thought nothing about it because he assumed that someone was moving some stock around. Hearing the noise more frequently, he went upstairs and as he approached the top of the stairs he shouted: "Who is up there?" and at that time the door opened from the women's lounge where the lights were on and a man burst out the door and made a turn into the beauty parlor on that floor. The witness then stated he realized the man could not get out in that area. He further stated he went to the back of the building and unlocked the door for some reason and then went back to his desk where he called the police. He then ran out the back door and he saw the man running at the end of the alley. He shouted to a

delivery man in the vicinity: "Stop that man, he's a burglar!" At that time the alleged burglar dropped his tools and took a right turn towards a parking lot. Baldwin says that he picked up a crowbar dropped by the man and started chasing him and threw the crowbar at him. Then the police came and he got in the car with them. Momentarily, he said, at that point he lost sight of the defendant, but the police caught sight of him promptly when they found him walking "very nonchalantly" down the sidewalk. This witness states that the appellant, at the time he was arrested, was short of breath and perspiring heavily, his clothes were damp and his coat was sweaty. In his pockets they found his gloves and his glasses. The gloves were wet. In his billfold they found $52.00. There were also eighteen one dollar bills and an undetermined amount of change wadded up in his pocket. The one dollar bills were damp.

The evidence further shows that the back door of the building had "pry marks" thereon which fitted the tools found with the safe upstairs. The safe showed evidence of having been tampered with and there was debris on the floor. The evidence further shows that appellant's car was found parked in a lot near the Frances Shop, and the man attempting to escape was running in the direction of the parking lot when he threw down the crowbar and brief case containing other tools. In appellant's car was also found a small sledge hammer and chisel. Specifically, on direct examination, witness Baldwin testified:

"Q. Now I'll ask you, Mr. Witness, if the man that came barging out of the lounge, as you testified, on the second floor of the Frances Shop on March 26, 1961, and the man that you saw in the alley On March 26, 1961, the man that you threw the crowbar at in the parking lot on March 26, 1961,

the man that was apprehended by the police on West Wayne Street on that date and the man that you identified in a show-up on that date, and the man that is here this morning sitting behind his attorney, Mr. Charles Bond, are all one and the same persons?

"A. Yes.

"Q. That is the man you saw in the Frances Shop on that date?

"A. Yes."

This, in our opinion, is sufficient to sustain the court's finding with reference to the identity of the appellant.

One other question remains for our consideration, and that is the testimony as to the ownership of certain money taken from a desk drawer in the Frances Shop. The evidence shows that this money was accumulated by employees placing money in a dish each day as a reimbursement for coffee or drinks which they secured. Each night the money was taken out of the dish, put in a little metal box and the office manager would put the box in a desk drawer. Witness Baldwin testified directly that there was probably "twenty or some odd dollars in the box" at the time of the alleged theft. He further testified:

"The coffee money that was in the desk belonged to Leo C. Ward., Incorporated, d/b/a the Frances Shop, and the money was not in the desk when I returned to the Frances Shop on March 26, 1961, and nothing else was missing other than this money."

Although there is some conflict as to whether the legal title to the money belonged to the employees or the company, still the evidence is undisputed that the possession was in the Frances Shop at the time of the alleged taking. Possession is

sufficient proof to sustain an allegation of ownership. 18 I. L. E., Larceny, §27.

In our opinion, the evidence was sufficient to support the finding of the trial court.

The judgment is affirmed as to Count I (second degree burglary) and Count IV (auto banditry) and reversed as to Count II (burglary with tools) on the State's admission of error and the trial court is directed to grant a new trial on Count II.

Landis, C. J., and Achor and Myers, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 194 N. E. 2d 617.