# FINCH *v.* STATE OF INDIANA.

[No. 30,571. Filed November 16, 1967.]

*Jack R. Wood,* of Shelbyville, for appellant.

*John J. Dillon,* Attorney General, *Edwin K. Steers,* former Attorney General, and *Frederick J. Graf,* Deputy Attorney General, for appellee.

LEWIS, J.—This is an appeal from a conviction of second degree burglary from the Superior Court of Shelby County. The appellant was charged by affidavit, which, omitting the formal parts, reads as follows:

". . . That on or about the 5th day of November A.D., 1963 at the County of Shelby, in the State of Indiana:

EUGEAN FINCH did then and there unlawfully, feloniously and burglariously break and enter into the building and structure of Elmer W. Thomas and Flora D. Thomas, husband and wife, occupied by Elmer W. Thomas, d/b/a Elmer W. Thomas Superette, then and there situate at 4 Vine Street, City of Shelbyville, County of Shelby, State of Indiana, which said building and structure was not a place of human habitation with the intent to commit a felony therein, towit: unlawfully and feloniously to take, steal and carry away the goods chattels and personal property of the said Elmer W. Thomas, d/b/a Elmer W. Thomas Superette, . . ."

The case was tried by jury, and on conviction the appellant cites as error the overruling of a motion for new trial, and relies upon the error that the verdict of the jury is not sustained by sufficient evidence.

The pertinent evidence is substantially as follows: About 7:30 a.m., on November 6, 1963, the Sheriff of Shelby County was summoned by an unidentified caller who informed the Sheriff that there was a man in a side ditch on Road 44 outside of Shelbyville. The Sheriff arrived at the scene and found appellant in a dirty and disheveled condition. Appellant possessed a sack of meat and several packages of cigarettes. The Sheriff took appellant in custody and returned with him to Shelbyville. On the way to Shelbyville the Sheriff learned by his car radio that a meat market had been bur-

glarized the night before, and several sirloin steaks were missing. The meat and cigarettes, which had been in the possession of the appellant met the general description of those goods that had been taken from the meat market, but were never positively identified specifically as those taken from the meat market.

The appellant had been found by the Sheriff approximately one and one-half miles away from the meat market, and he was found some nine and one-half hours after the time of the burglary. When asked for an explanation of the meat and cigarettes in his possession, the appellant gave different and conflicting stories.

The only other evidence of any possible probative value introduced by the State was from testimony that "something that looked like plaster" was combed from appellant's hair. The store had been entered by means of opening a second-story window and breaking through a plaster ceiling. Appellant offered testimony that on the day of the burglary he had been engaged in removing a plaster ceiling from a residence.

This, then, is the totality of the evidence against the appellant. *Assuming that the goods found with him were the actual goods stolen, the unexplained possession of the stolen goods is sufficient to sustain a conviction for larceny.* Gilley et al. v. State (1949), 227 Ind. 701, 88 N. E. 2d 759. However, this man was convicted of burglary.

We now consider whether or not there is evidence in the record to prove the elements of burglary, to wit:

". . . unlawful, feloniously and burglariously break and enter . . ."

In doing this, a consideration of whether or not the appellant having in his possession stolen goods while one and one-half miles from the scene of the burglary and nine and one-half hours after the alleged burglary, together with some plaster-like substance in his hair, is adequate to sustain a conviction for breaking and entering.

A conviction for burglary was affirmed by this Court on circumstantial evidence alone in *Bradley* v. *State* (1964), 244 Ind. 630, 195 N. E. 2d 347. Bradley was apprehended with the stolen goods in his possession almost immediately after the crime was committed. In addition to the short time element, Bradley was standing immediately across the street from the burglary when he was apprehended. This Court reversed a conviction for burglary in a case where the defendant had exclusive unexplained possession of the stolen goods. *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671. In the *McAdams* case, however, the possession was not discovered until some three and one-half months after the alleged burglary. *Bradley* v. *State, supra,* and *McAdams* v. *State, supra, both concur in the doctrine that possession of stolen goods is an evidentiary fact to be weighed by the jury, but is merely one circumstance to be considered with other circumstances.* In reversing the *McAdams* case, this Court quoted an accepted doctrine as follows:

". . . When evidence before the jury is entirely circumstantial, certain rules have been established for the jury's guidance, and it is not enough that the circumstances be consistent with the hypothesis of guilt, it must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence, and must be such that the trier of the facts may reasonably and naturally infer to a moral certainty the existence of the fact sought to be proved."

From these cases, where the stolen goods were positively identified, mere possession was not enough. It had to be coupled with other evidence showing breaking and entering. In the instant case, the evidence is not conclusive that the goods are those actually stolen. *In considering the sufficiency of circumstantial evidence, we must constantly have in mind the doctrine of reasonable doubt.* This Court said in *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641, as follows:

". . . The rule of law defining proof beyond a reasonable doubt has been well settled for many years and requires each juror to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own dearest and most important interests, under circumstances where there was no compulsion or coercion upon him to act at all. *Chambers* v. *State* (1953), 232 Ind. 349, 356, 111 N. E. 2d 816; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N. E. 528; *Bradley* v. *State* (1870), 31 Ind. 492. . . ."

*While this Court will not weigh the evidence, it must be determined if there was substantial evidence.* Substantial evidence means more than "seeming or imaginary." *A verdict upon which reasonable men might differ will not be set aside. However, if no reasonable man could find that the evidence has proved the accused guilty beyond a reasonable doubt, then the verdict is not sustained by sufficient evidence. Furthermore, proof beyond a reasonable doubt is more than proof by a preponderance of the evidence. Baker* v. *State, supra; Epps* v. *State* (1963), 244 Ind. 515, 526, 192 N. E. 2d 459; *Anderson* v. *State* (1959), 239 Ind. 372, 378, 156 N. E. 2d 384.

*We hold that the evidence adduced by the State was not substantial evidence to prove each and every material allegation of the affidavit and that the verdict is not sustained by sufficient evidence.* The judgment is, therefore, reversed.

Hunter, C. J. and Jackson and Mote, JJ., concur.

Arterburn, J., dissents with opinion.

DISSENTING OPINION

ARTERBURN, J.—I regret that I must dissent from the majority opinion, which reverses the trial court's conviction of the appellant of second degree burglary. I must do this because I think the opinion departs from well settled princi-

ples of appellate review of the evidence when a case comes before this Court on appeal.

I feel the majority opinion not only weighs the evidence and the inferences to be drawn therefrom, but in fact substitutes this Court's opinion as to what is proof beyond a reasonable doubt, which conclusion is one solely for the jury.

Examining the facts most favorable to the State in this appeal, we find that the appellant was arrested by the sheriff when he was found lying in a ditch at the side of the road about a mile and half from the meat market, which had been broken into during the night. He had a sack of meat which he admitted was in his possession, and packages of cigarettes. It was about 7:30 a.m. when he was arrested. The majority opinion says it was 9½ hours after the time of the burglary. We find nothing in the evidence showing exactly when the burglary occurred except that the shop was closed about 10:00 o'clock the night before and the burglary was discovered about 7:30 a.m. the next morning.

The evidence shows without contradiction that someone had entered the meat market during the night through a hole in the ceiling by breaking through the plastering. At the time the police officers arrested the appellant, the evidence shows that the arresting officer positively testified as to appellant: "Well, he had plaster on his coat, his pants; also he had some plaster in his hair."

We find no reason to say, as the majority opinion says, that it was "something that looked like plaster." The evidence shows that there was loose plaster on the floor and on top of the meat counter below the hole in the ceiling where the entry was made into the store. It appears to me that all this evidence is favorable to the State, for consideration in support of the jury's verdict in identifying the appellant.

The majority opinion further says: "The meat and cigarettes which had been in the possession of appellant met the general description of those goods that had been taken from

the meat market, but were never positively identified specifically as those taken from the meat market." We know of no rule of law which says that stolen property has to be "positively" or absolutely identified beyond any doubt. The fact of the matter is, it is recognized in law that fungible goods, because of their similarity, can never be absolutely identified. It is practically impossible to positively identify such goods as wheat, potatoes, meat or even money which has been stolen, except by some identification and characteristics of the containers, sacks, etc., in which such fungible goods are contained. In this case, in our opinion, the cigarettes that were stolen were identified as accurately and positively as could be.

The evidence shows that the serial numbers of the packs of cigarettes (Pall Malls) taken from the appellant when he was arrested matched the numbers of the packs remaining in the store. It appears to us this is sufficient evidence for the jury's consideration that it was part of the property stolen.

The evidence shows as to the identification of the meat which was found in the possession of the appellant that the owner of the store said that each piece was wrapped in a green paper and also a "pink colored paper" that was the same as that used in his shop. The owner testified with reference to the meat in question as follows:

"Q  Now, I wonder, sir, if you will step down here, please, to the table which is directly in front of the Judge's bench. On this table, there is what has been identified and admitted in evidence as State's Exhibit 14. I'll ask you to step around here to the side, sir, if you can. You will notice that in State's Exhibit 14 there are items of green paper. Can you identify those items sir?

"A  Well, this is the kind of green paper that we buy to paper our meats on.

"Q  And when you say paper our meats, to what are you referring? What do you do with this green paper?

"A    We cut our meat, then we also wipe the sawdust off, then we paper each piece like this (indicating), in order to keep its color. If we didn't why its color would make it dark in here.

"Q    All right, sir. Now, these items of meat are also wrapped in a pinkish colored paper. Are you able to identify that paper?

"A    Yes, that's the same type of paper that we wrap our meat in.

"Q    Now, I'll ask you, if you will, sir, to look directly at the meat itself. Are you able from examining some of these pieces of meat to tell anything about it, or about where they might have come from?

"A    I couldn't tell you where they come from, because we buy beef from different packers, in fact, three that we buy most of all of our beef from, but as far as the trim, we do trim our meat close. I mean, for example, this round is trimmed exactly the way we trim our rounds. Most of the fat is taken off the edge.

"Q    When you get this beef from your wholesaler, it's not cut as it is right now, is it?

"A    No. we buy our beef all in sides.

"Q    All in sides? And you have people there in your establishment, in your business, who cut your beef for you for resale?

"A    Yes, sir.

"Q    Now, I believe there was testimony to the effect this morning that Marion Thomas is employed at your grocery store; is that right?

"A    Marion is the meat manager. He does all the buying and does most all the cutting and trimming.

"Q    And would you say that the type of beef which you have here today, in your opinion, was trimmed by Marion Thomas?

"A    Yes, from all indications, it is. I mean, in all this, the bone, in this cut for example, the bone is taken off here, the meat is trimmed off next to the bone; for example, like this cut here.

"Q    In your opinion then, Mr. Thomas, this meat was trimmed by Marion Thomas?

"A    It looks just exactly the way we trim our meat."

This is as definite and certain as any owner could be about such fungible goods as meat or cigarettes which have been stolen, without the owner placing identifying marks such as his initials on each piece, in anticipation of a burglary.

The owner of the store stated that his manager trims and cuts the meat in the fashion in which the meat in evidence was cut. It was wrapped with green paper and a pink paper used in his shop. For this witness to go further and express his opinion that it was the exact property stolen or taken from his shop would have been a conclusion which was for the jury to determine from the evidence. The jury had the facts and the jury made that determination. We in this Court have no right to usurp the constitutional right of the jury to determine the facts in this case. It is not necessary that every bit of evidence as to identity of the property stolen, be absolutely and conclusively identified. Very few things in this world are positive and certain beyond any doubt or question. It is sufficient if the identification is established by circumstantial evidence which satisfies the jury. *Mason* v. *State* (1963), 244 Ind. 206, 191 N. E. 2d 705.

The unexplained possession of recently stolen goods in the hands of a defendant is sufficient to sustain a conviction of larceny or burglary where there is evidence of a breaking in by a defendant, as in this case. The evidence is inextricably bound together. The person who committed this larceny could do it by no other means than breaking into the building through the ceiling from the evidence presented to the jury. He had marks of such break-in (plaster on his hair and his clothing).

With this evidence any average person on the street would conclude that appellant was guilty, just as the jury did.

It has long been the doctrine of criminal jurisprudence—so long in fact—that the "memory of man runneth not to the contrary" that on appeal in determining the sufficiency of the evidence, "we may consider only that evidence most favorable

to the State, together with all reasonable and logical inferences." *Tait* v. *State* (1963), 244 Ind. 35, 38, 188 N. E. 2d 537, 540.

> "At the same time, we may not weigh conflicting evidence or determine the credibility of witnesses." *Metz* v. *State* (1963), 244 Ind. 536, 538, 194 N. E. 2d 617, 618.

> "On appeal only the evidence most favorable to the State will be considered, as well as all reasonable and logical inferences that may be drawn therefrom." *Cox* v. *State* (1964), 246 Ind. 91, 201 N. E. 2d 693, 695.

Judge Jackson, speaking for the Court very recently (March, 1967) stated:

> "This Court has repeatedly held that it will not weigh the evidence but will consider that evidence most favorable to the State when reviewing the sufficiency of evidence." *Walker* v. *State* (1967), 248 Ind. 319, 224 N. E. 2d 45, 46.

Judge Mote, speaking for this Court, has said:

> "It is amazing that so many appellants come to this Court relying on the ground under discussion here when it is well settled that this Court does not weigh the evidence nor will it determine the credibility of witnesses." *Rice* v. *State* (1967), 248 Ind. 200, 223 N. E. 2d 579, 582.

We, on appeal, must sustain the judgment of the jury and trial court if there is any evidence with reasonable inferences to support it. We must on this appeal consider the evidence most favorable to the State. We may not say on appeal in this Court that the evidence must convince us beyond a reasonable doubt. That is for the jury below—not for us on appeal.

The majority opinion says in part. "The evidence is not *conclusive* that the goods are those actually stolen." (Our italics) Our answer to that statement is, the evidence does not have to be conclusive. Circumstantial evidence is never conclusive, yet it can be the basis of a conviction. The majority opinion further says in part: "Since the State has failed to prove beyond a reasonable doubt that the goods found

were indeed those stolen . . . this Court must reverse the decision of the trial court."

I feel this Court has usurped the jury's function in this case, and if this majority opinion stands, it will violate the fundamental principles of appellate review in criminal cases. The opinion will haunt us, as some other improvident opinions have in the past, and be cited to urge us to weigh the evidence in other criminal cases on review, as was deplored by Judge Mote in his comment above.

I feel the judgment of the trial court should be affirmed.

NOTE.—Reported in 231 N. E. 2d 45.