## MARTIN *v.* STATE OF INDIANA.

[No. 967S79. Filed May 22, 1968.]

*William C. Erbecker,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Duejean C. Garrett,* Deputy Attorney General, for appellee.

PER CURIAM.—This is an appeal from a conviction of second degree burglary and felony theft, after a trial by the Judge of the Monroe Superior Court without a jury, and in which the appellant was found guilty of both counts.

This cause was initiated by the filing of the state's affidavit in two counts in the Monroe Superior Court, omitting caption and jurat, which reads as follows:

> "Jack Findley being duly sworn, on his oath says that Billy Mack Martin on the 3rd day of September, 1966, at and in said County and State aforesaid did then and there commit the crime of burglary in that he unlawfully and knowingly broke and entered into a certain building, not a dwelling-house or place of human habitation, located at Dunn Street and State Road #46 Bypass, Bloomington, Indiana, owned by the North Central Church of Christ, with intent to commit a certain felony therein, to-wit: theft, to unlawfully and knowingly obtain and exert unauthorized control over personal property of the owner, the North Central Church of Christ, with the intent to deprive such owner permanently of the use and benefit of such property, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana.
>
> "Jack Findley being duly sworn on his oath says that Billy Mack Martin on the 3rd day of September, 1966, at and in said County and State aforesaid, did then and there, commit the crime of theft in that he did then and there knowingly, unlawfully and feloniously, without consent of the owner, obtain and exact unauthorized control over the

following property, to-wit: carpenter tools, of a value of $200.00 owned by Jack Findley and did then and thereby intend to deprive said owner permanently of the use and benefit of said property, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

The appellant assigns as error the overruling of his motion for a new trial. The bulk of appellant's argument relates to specifications of error that the finding of the court is contrary to law and not sustained by sufficient evidence. In support of the specifications, appellant alleges lack of evidentiary support proving or intending to prove he actually or passively engaged in the participation of the burglary charge.

The crime of second degree burglary is set forth in Burns' § 10-701(b) which states the following:

"Whoever breaks and enters into any . . . building or structure other than a dwelling-house or place of human habitation, with the intent to commit a felony therein, shall be guilty of burglary in the second degree, . . ."

When the question of sufficiency of the evidence is raised, the Supreme Court will consider only that evidence most favorable to the State, together with all reasonable and logical inferences which may be drawn therefrom. *Fisher* v. *State,* (1966), 9 Ind. Dec. 108, 219 N. E. 2d 818, [247 Ind. 529]; *Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. 2d 537. Moreover, the Supreme Court on appeal will not weigh the evidence or determine the credibility of witnesses. *Stock* v. *State* (1966), 9 Ind. Dec. 121, 219 N. E. 2d 809, [247 Ind. 532].

The general rule is that a conviction will be sustained if there is substantial evidence to prove each material allegation of the affidavit. While "substantial evidence" means more than "seeming or imaginary," a verdict upon which reasonable men might differ will not be set aside. *Finch* v. *State* (1967), 12 Ind. Dec. 22, 231 N. E. 2d 45, 47, [249 Ind. 122].

A summary of the evidence indicates that on September 3, 1966, in the early afternoon, a member of the building committee of the North Central Church of Christ in Bloomington, Indiana, was driving by the church property. He noticed a 1955 Dodge pick-up truck in the north driveway near where a shed was located, which contained tools and material owned by the church, and by various contracting firms involved in the construction. The appellant admitted being the driver of the said truck on that day, admitted the truck was in his name, although he maintained he was not actually the owner. There was another man there besides the appellant. It was brought out that the appellant was unable to start the motor of the truck, and the member of the building committee assisted in getting a jumper cable to start same. The evidence further indicated in response to a question by the member of the building committee inquiring what appellant and his companion were doing on this job, it was stated that they were working on the brick work.

The evidence further disclosed that the lock on the shed above described had been broken, the door was partially open, a tool box had been torn open and that a hasp had been pried off the shed. There was testimony of the list of the tools that were missing and the license number of the truck driven by the appellant. The tools missing from the shed were recovered and were identified.

Appellant, in his testimony, claims that on September 2, 1966, he met a man at a tavern. He did not know this man and does not remember his name, but he agreed to bring this stranger to Bloomington to pick up the stranger's tools. He was to be paid for the trip, but was never told how much. The appellant testified that on September 3, 1966, he and the stranger proceeded to Bloomington in appellant's truck; that under directions from the stranger, he went to the shed and backed up to it. The stranger proceeded to load up the tools in the truck. Appellant heard some racket at the door of the shed, but never got out of the truck or looked to see what was

happening. The appellant further testified that he was directed by the stranger to return to Indianapolis where the stranger intended to sell the tools. The appellant further testified that when the stranger was unable to sell the tools, appellant offered to buy them for $146.00 in cash, which he paid at the time, plus $60.00 additional which he was to pay the following week. Appellant further testified that the stranger gave him a receipt for the payment, which he produced at the trial and which was admitted into evidence as defendant's Exhibit "A." The exhibit reads as follows:

"I Don Dinger I sold Bill Martin equipment for $90 received $30 balance due 9th Sept."

In response to appellant's attorney's question on direct examination, appellant stated he could neither read nor write. He did state, however, in response to the question as follows:

"Q—How far did you go in school?
A—Eighth."

In the case of *Schweigel* v. *State* (1964), 245 Ind. 6, 195 N. E. 2d 848, Judge Arterburn stated the following:

"It is sufficient if the evidence satisfied the triers of fact beyond a reasonable doubt. The triers of fact are not required to accept the defendant's story where his credibility has been impeached or where the evidence leads them reasonably to a contrary conclusion."

Likewise, in the case of *Dennison* v. *State* (1952), 230 Ind. 353, 103 N. E. 2d 443, the Supreme Court held that:

"This court cannot weigh the evidence, but must determine from the direct and circumstantial evidence, with the inferences to be drawn therefrom, most favorable to the appellee, whether there is substantial evidence of probative value upon each material element of the crime charged."

In addition, the *Dennison* case, *supra,* held that where the evidence, either direct or circumstantial, is such that two

438

inferences may reasonably be drawn therefrom, one of guilt and one of innocence, it is not within the province of the court to determine which inference should have control, this determination being exclusively for the trial court. *Schlegel* v. *State* (1950), 228 Ind. 205, 91 N. E. 2d 167; *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445.

The appellant cited the recent decision in *Manlove* v. *State* (1968), 12 Ind. Dec. 494 [250 Ind. 70]. We do not believe the holding in that case in conflict to the conclusion of the trial court, in the case on appeal. This court's conclusion that there was sufficient evidence that no reasonable hypothesis of innocence existed, is not inconsistent with the evidence presented to the trial court.

The judgment of the trial court is affirmed.

Jackson, J., concurs in result.

NOTE.—Reported in 235 N. E. 2d 64.